**OLD WEST END ASSOCIATION, et al., Plaintiffs,**

v.

**BUCKEYE FEDERAL SAVINGS & LOAN, et al., Defendants.**

No. C85–7814.

United States District Court, N.D. Ohio, W.D.

July 22, 1987.

Stephen M. Dane, Cooper, Straub, Walinski & Cramer, Toledo, Ohio, for plaintiffs.

Rolf H. Scheidel, Shumaker, Loop & Kendrick, Toledo, Ohio, Nanci L. Danison, Vorys, Sater Seymour & Pease, Columbus, Ohio, for defendants.

## OPINION AND ORDER

McQUADE, District Judge.

This action is a housing discrimination case. Plaintiff's suit is brought under 42 U.S.C. § 1981 (the Civil Rights Act of 1870), 42 U.S.C. § 1982 (the Civil Rights Act of 1866), 42 U.S.C. § 3601 et. seq. (Title VIII of the Civil Rights Act of 1968, Title VIII), and 42 U.S.C. § 1985(3). Plaintiffs seek both monetary and injunctive relief. Plaintiffs, the sellers of a Toledo residence, the sellers' real estate agent, and the Old West End Association accuse defendants Mortgage Investors Corporation (MIC), and Buckeye Federal Savings & Loan Association (Buckeye) of engaging in the discriminatory practice of redlining. Plaintiffs allege that defendants have discriminated in the financing of housing based upon the racial composition of the neighborhood in which the property is located. Defendants, MIC and Buckeye, have each filed a motion for summary judgment. Plaintiffs oppose both motions. Each defendant has also filed, with leave of court, a reply to plaintiffs' opposition brief.

The parties involved in the transaction underlying this suit are white. This factor, however, is irrelevant to the determination of defendants' motions for summary judgment. This court has previously found that non-minorities have standing to maintain discrimination actions for injuries suffered by them as a result of racially discriminatory practices. *See Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Harrison v. Otto G. Heinzeroth Mortgage Co.*, 414 F.Supp. 66 (N.D.Ohio 1976); *Watts v. Boyd Properties, Inc.*, 758 F.2d 1482 (11th Cir.1985).

The transaction underlying this dispute involves the sale of residential property located in the Old West End in Toledo, Ohio. In late 1984, plaintiffs Michael and Gale Mahaffey retained plaintiff Michael Murray of the Danberry Company to list and sell their residence. The sellers, in January, 1985, accepted the offer of Michael McMahon and Vicki Plant to purchase the Mahaffey residence. The agreed upon purchase price was $78,500.00. The

buyers, McMahon and Plant are not parties to this action.

On behalf of the buyers, the sellers' real estate agent contacted defendant MIC to inquire about interest rates, closing costs, loan details and to review the buyers' financial background and potential creditworthiness. On February 4, 1985, the two buyers met with the real estate agent and defendant MIC. During that meeting, the buyers completed a real estate mortgage loan application and the associated paperwork. Defendants, at that time, requested an appraisal of the Old West End residence. The appraisal arrived at a value equal to the sale price. The appraisal also noted the predominant value of properties in the area to be $70,000.00. Upon completion of the necessary paperwork, MIC packaged and then transmitted the loan application to defendant Buckeye's office in Columbus for its review.

In late February, 1985, Buckeye notified MIC that it was rejecting the McMahon/Plant loan application. The reasons given for the rejection were that: (1) the property did not qualify for maximum financing, and (2) the property appraisal was unacceptable. MIC alleges that it suggested several alternatives to plaintiffs as well as attempted to cure the factors to which Buckeye objected. The evidence indicates that the appraisal showed a predominant value of $70,000.00 for other homes in the area. There is conflicting evidence that the loan would be limited to this figure.

In March 1985, allegedly all parties were notified that the loan application would be rejected absent a reduction of the sale price. After exploring several alternatives to overcome Buckeye's objections to the loan, the parties executed a revised purchase contract, the result of which was that the mortgage loan was reduced to the amount of $70,000.00. MIC submitted a revised loan application package to Buckeye on March 6, 1985. On March 11, 1985, defendant Buckeye approved the new loan application. On March 14, 1985, the closing on the Old West End property took place. Immediately thereafter, the McMahon/Plant mortgage was assigned to de-

fendant Buckeye by defendant MIC. In July of that same year, the mortgage was purchased by Fannie Mae from defendant Buckeye.

The objective of a summary judgment is to pierce the pleadings and to assess the proof to determine if there is a genuine need for trial. *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273 (6th Cir.1974). A motion for summary judgment may be granted only when no material facts are in dispute, Fed.R.Civ.P. 56(c); *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir.1972), and when those facts when viewed in the light most favorable to the non-moving party, entitle the moving party to judgment as a matter of law. *Willetts v. Ford Motor Company*, 583 F.2d 852 (6th Cir.1978).

## BUCKEYE'S MOTION FOR SUMMARY JUDGMENT

The order of presentation of proof in discrimination cases was established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although *McDonnell Douglas* was a Title VII employment discrimination case, its standards have been applied to Title VIII and Sections 1981 and 1982 claims. *Shaw v. Cassar*, 558 F.Supp. 303 (E.D. Mich.1983); *See Drain v. Friedman*, 422 F.Supp. 366 (N.D.Ohio 1976); *United States v. Parma*, 494 F.Supp. 1049 (N.D. Ohio) *appeal dismissed* 633 F.2d 218 (6th Cir.1980); *Smith v. Anchor Bldg. Corp.*, 536 F.2d 231 (8th Cir.1976). *McDonnell Douglas* establishes that first, the plaintiff has the burden of demonstrating by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the plaintiff has established its prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for its action. *Id.* If the defendant satisfies this burden, the plaintiff must, to be successful, prove that the defendant's legitimate, non-discriminatory reason is in fact a mere pretext. *Id.* at 804, 93 S.Ct. at 1825.

The phrase "prima facie case" denotes the establishment of a legal, mandatory, rebuttable presumption. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981).

■ Construing, as we must, the evidence most favorably toward the plaintiffs, the plaintiffs have established that: (1) the housing sought to be secured was in a minority neighborhood; (2) that an application for a loan to purchase the housing located in a minority neighborhood was made; (3) that an independent appraisal concluded that the value of the housing equaled the sale price; (4) that the buyers were creditworthy; and (5) that the loan was rejected. These facts, the court believes, are sufficient to establish a prima facie case under both the Fair Housing Act and the Civil Rights Act.

The next step under *McDonnell Douglas* is that the defendant must produce admissible evidence which would allow a trier of fact rationally to conclude that the decision to reject the loan had not been motivated by a discriminatory animus. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95.

■ Leeb has testified that the property did not qualify for maximum financing because "the value of the property exceeded the predominant value in the area, and therefore, that posed a marketing problem should the borrower default on his loan." Leeb Deposition at 24.

Leeb further testified that in reaching her decision to reject the loan, she utilized "Fannie Mae's guidelines regarding maximum financing...." *Id.* at 23. The guideline appears in Fannie Mae's underwriting policy, Section 103. Defendant contends that it applied Fannie Mae standards to insure that it could resell its mortgages to Fannie Mae.

Section 103 of Fannie Mae's guidelines states:

When the property has a sales price that approaches the upper price level, the loan is acceptable on maximum terms as long as the lender believes that it does represent a significant overimprovement and that it would appeal to enough qualified purchasers to create an active market. When the property has a sales price that

exceeds the upper price level, the loan terms should generally be more conservative since it may not be acceptable to the typical buyer. However, a lender should consider the possibility that a property in an urban area is among those being rehabilitated.

O'Connell Deposition, Exhibit 30.

Patricia Leeb's interpretation of § 103 is disputed by plaintiffs' expert, Calvin Bradford. However, to satisfy its intermediate burden of proof, the defendant need not persuade the trier of fact that the action was lawful. *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1095–96. This exceeds defendant's burden of production. *Id.* The prima facie case is rebutted when the defendant articulates lawful reasons for its action. *Id.* Beyond a doubt, a trier of fact could rationally find that Patricia Leeb's application of the predominant value policy to plaintiffs' loan was not motivated by a discriminatory animus.

Having successfully rebutted the prima facie case, "the factually inquiry proceeds to a new level of specificity." *Id.* at 255, 101 S.Ct. at 1095. The presumption of discrimination drops from the case. *United States Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1981). The factual inquiry in a § 1981, § 1982 and § 1985 case becomes whether the defendant intentionally discriminated against plaintiffs. In terms of Buckeye's motion for summary judgment, the inquiry is whether there is evidence from which reasonable minds could find that defendant's actions were motivated by an intent to discriminate.

Buckeye's documentation of the original McMahon/Plant loan indicates that the loan was rejected by underwriter Patricia Leeb because the property did not qualify for maximum financing and that the appraisal was unacceptable. *See* Exhibit A attached to Buckeye's motion for summary judgment. During her deposition, Leeb expanded on the reasons underlying the rejection. Leeb Deposition at 23–42. Leeb testified that the loan application could have been properly rejected based solely on either of the two reasons given. She testified that the property did not qualify for maximum financing because "the value of the property exceeded the predominant value in the area, and therefore, that posed a marketing problem should the borrower default on his loan." *Id.* at 24. Moreover, the appraisal was unacceptable because "based on what the appraiser has given me, as far as the comparables, he is working the value range, indicated value range from $71,900 to $81,700 ... the value range is excessive...." *Id.* at 35.

Leeb further testified that in reaching her decision to reject the loan, she utilized "Buckeye's guidelines and ... Fannie Mae's guidelines regarding maximum financing...." *Id.* at 23. Buckeye, however, points out that it has no predominant value policy as defined by plaintiffs. The policy appears in Fannie Mae's underwriting guidelines, Section 103. Buckeye's alleged legitimate, non-discriminatory justification states that it was Fannie Mae's guidelines which it applied to the McMahon/Plant application. Defendant contends that it applied Fannie Mae standards to insure that it could resell its mortgages to Fannie Mae.

Patricia Leeb's interpretation of § 103, *Id.* at 24, is disputed by plaintiffs' expert, Calvin Bradford. Bradford Deposition at 66–67 and 83. Bradford testified that § 103 sets a different standard for determining the marketability of property in an area that's been rehabilitated. *Id.* at 83. Moreover, it is important to note that the sales price on the resubmitted loan application also exceeded the predominant value figure, but the loan was approved and resold to Fannie Mae. Additionally, O'Connell testified that while it is relevant to compare the sales price with the predominant value, nowhere in Fannie Mae's guidelines is it stated that based on this comparison alone, a loan should be rejected. O'Connell Deposition at 27–30.

Fannie Mae's guidelines also contain express circumstances under which a maximum financed property will not be considered for repurchase. *See* Gray Deposition, Exhibit 4, Sections 405, 405.02, 405.03, 405.04, 406.01, 406.02 and 409.02. Buck-

eye's Exhibit B attached to its motion for summary judgment indicates that the subject property could not be determined unmarketable based on the Fannie Mae's guidelines which expressly define the conditions under which a loan will not be repurchased. This evidence is supplemented by plaintiffs' expert Calvin Bradford's deposition testimony. *See* Bradford Deposition p. 66–74. Bradford's testimony disputes both Leeb's deposition testimony and the deposition testimony of Robert O'Connell, in which both Leeb and O'Connell interpret the predominant value guideline expressed in Fannie Mae's Section 103.

Defendant Buckeye contends that a second reason existed for the rejection of the McMahon/Plant loan application. Buckeye found the first appraisal unacceptable. Buckeye contends the appraisal was deficient because the adjustments made to the comparable properties exceeded an acceptable percentage of the comparable property's value. Plaintiffs' expert Bradford testified that the comparables used were appropriate because the Old West End was being rehabilitated, and that the comparables used in the second appraisal were essentially the same as those used in the first application.

■ Defendant incorrectly suggests that direct evidence of discriminatory intent is required to prevail on claims of violations of Sections 1981, 1982, 1985 and the Fair Housing Act. *See e.g., U.S. Postal Service Board of Governors v. Aikens, supra* at 714 n. 3, 103 S.Ct. at 1481 n. 3. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Hts. v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). An intent to discriminate is most often determined from the manner in which it was done and the means used. An intent to discriminate is rarely openly expressed. The patterns of defendants' past treatment of loan applications from minority neighborhoods, and departures from standard underwriting or loan acceptance procedures may shed some light on the defendants' purposes. *See, e.g., Dailey v. City of Lawton,* 425 F.2d 1037 (10th Cir.1970) (Racial motivation may be inferred where questioned action was found to be arbitrary and unreasonable). On balance, the court believes that genuine issues of material fact exist sufficient to place with the trier of fact the ultimate decision of whether the defendant Buckeye violated the Civil Rights Act.

In support of their Fair Housing Act claim, plaintiffs argue that Buckeye's underwriting practices have resulted in discriminatory effects. Proof of a pattern or practice of discrimination is sufficient to sustain a violation of the Fair Housing Act. *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978) (Arlington II). Under the Fair Housing Act, courts have also recognized two types of discriminatory effects which a housing decision that is neutral on its face may have. *Id.* at 1290. First, discriminatory effect may take the form of a greater or disparate impact on a minority group than on a non-minority group. *Id.* Second, discriminatory effect may arise from disparate treatment of different racial groups. *Id.*

■ Defendant Buckeye urges that plaintiffs have no admissible evidence of discriminatory effect. Plaintiffs, however, offer the affidavit of George Galster. Galster states that based upon a statistical analysis, that he has formed an opinion that "there exists statistically significant differences between Buckeye's treatment of conventional mortgage loan applications originating from white neighborhoods and Buckeye's treatment of similar applications from integrated or minority neighborhoods." Galster Affidavit ¶ 5. This expert opinion is admissible. Rule 703, Federal Rules of Evidence. It raises the issue of whether Buckeye's underwriting policies in fact result in discriminatory effects regardless of whether the facts or data relied upon by Bradford are admissible into evidence.

Plaintiffs also rely upon the statistical evidence contained in Exhibits 2–10 as proof that Buckeye's underwriting policy resulted in discriminatory effects. Defendant Buckeye urges that Exhibits 2–10 are inadmissible for several reasons: (1) The tables are not properly authenticated as required by Rule 901 of the Federal Rules of Evidence; (2) The calculations do not meet the test of relevancy as required by Rules 401 and 402 of the Federal Rules of Evidence; and (3) In the alternative, the tables are inadmissible under Rule 403 of the Federal Rules of Evidence.

■ Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Defendants argue that all mortgage loans, rather than only conventional mortgages, should be considered. However, the practices at issue refer solely to conventional mortgages and not to government approved and guaranteed mortgages. i.e., FHA and VA loans. For this reason, the court finds that plaintiffs' statistical tables contained in Exhibits 2–10 are relevant as required by Rule 401 of the Federal Rules of Evidence. Because the exhibits are relevant, Rule 402 does not exclude Exhibits 2–10. Fed.R.Evid. 402.

Buckeye argues as a preliminary matter that the calculations are not identified and authenticated by any witness with knowledge as required by Rule 901(b)(1) of the Federal Rules of Evidence. Plaintiffs' statistical tables are authenticated, however, based on the affidavit, Exhibit 1, and the footnote on Exhibits 2–10 which indicates the source of the calculations.

Defendant Buckeye urges further that Exhibits 2–10 should be excluded based on Rule 403 of the Federal Rules of Evidence. Rule 403 states in pertinent part that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed.R.Evid. 403. Defendant argues that the number of conventional loans are too small to be statistically significant, and therefore, the evidence is prejudicial and confusing.

Plaintiffs' statistics indicate that from 1981 until January, 1987, slightly over one hundred seventy seven conventional loans were tendered to Buckeye for purchase. Of these loan applications, only ten applications were submitted from areas with a racial composition of over 20% black. Of these ten applications, four were submitted from neighborhoods comparable to the Old West End in which the composition of blacks exceeded 40%. The tables then calculate the percentage of loans in white areas rejected verses the percentage of the four loans rejected out of the ten submitted from black areas. The resulting figure indicates a rejection rate of 40% of the applications submitted from neighborhoods of over 20% black composition.

■ The total number of conventional loans submitted to Buckeye is admittedly small, probably because the majority of loans in minority neighborhoods are FHA or VA loans, rather than conventional loans. Small numbers are not necessarily misleading. Defendant has taken great pains in its brief to explain its reasons for the rejections of the conventional loans. The same reasons can be detailed to the trier of fact. Defendant's objection goes to the weight to be given to the evidence, not its admissibility. The trier of fact weighs the evidence. Plaintiffs have evidence from which reasonable minds could conclude that defendant's actions had a discriminatory effect. Defendant Buckeye, therefore is not entitled to summary judgment on plaintiffs' Fair Housing Act claim.

## MIC'S MOTION FOR SUMMARY JUDGMENT

■ Defendant MIC also demands summary judgment. Plaintiffs do not attempt to impute Buckeye's allegedly discriminatory policies to MIC under an agency theory. Rather, plaintiffs contend that MIC has fully adopted and routinely applies the racial discriminatory practices of Buckeye when it denies a mortgage loan application.

MIC is responsible, as a principal, because MIC was the entity who refused "the equal right to contract" according to plaintiffs.

Absent is a factual basis for plaintiffs' theories of liability against MIC. Indeed, plaintiffs have no evidence to support a prima facie case of discrimination against MIC. The loan was not rejected by MIC, but by Buckeye based on an allegedly discriminatory policy that was Buckeye's, not MIC's. Plaintiffs have presented no factual basis from which reasonable minds could conclude that MIC adopted and routinely applied Buckeye's allegedly discriminatory policy. Rule 56(e) Fed.R.Civ.P. No genuine issue of material fact exists as to MIC's responsibility here, and MIC's motion for summary judgment must be sustained.

Having dismissed plaintiffs' claims against MIC, it follows that plaintiffs' § 1985(3) claim for conspiracy must also fail.

It is therefore

ORDERED that plaintiffs' § 1985(3) claim is dismissed;

FURTHER ORDERED that, in all other respects, defendant Buckeye's motion for summary judgment is denied;

FURTHER ORDERED that defendant MIC's motion for summary judgment is sustained and said defendant is hereby dismissed.