Hersey H. STEPTOE, et al., Plaintiffs,

v.

SAVINGS OF AMERICA,
et al., Defendants.

No. 3:89CV7329.

United States District Court,
N.D. Ohio, W.D.

Aug. 24, 1992.

C. Thomas McCarter, Newcomer, McCarter & Green, Toledo, Ohio, for plaintiffs.

Jennifer J. Dawson, Marshall & Melhorn, Toledo, Ohio, for Savings of America, Residential Loans defendant.

Mary Ann Whipple, Fuller & Henry, Toledo, Ohio, for Rollie Morgan, Individually and in his official capacity as Appraisal Officer of Sav. of America, Residential Loans defendant.

## MEMORANDUM AND ORDER

WALINSKI, Senior District Judge.

This cause is before the Court on defendant's motion for summary judgment, plaintiffs' opposition thereto, defendant's reply and plaintiffs' surrebuttal; and on plaintiffs' motion for leave to amend their complaint by interlineation to add Rollie Morgan (Morgan) as a party defendant to this action, Morgan's opposition thereto and plaintiffs' reply. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Plaintiffs Hersey H. and Lillian Steptoe (the Steptoes) are a black couple who engaged the services of plaintiff Joyce Beauregard (Beauregard), a realtor with Danberry Realty, to help them find and purchase a home in a racially mixed neighborhood. The Steptoes found a home they liked located in the Old West End [1] in Toledo, Ohio at 2313 Robinwood (the Robinwood home). It was priced at $129,900. They offered the seller $115,000 for it, contingent upon them obtaining an independent appraisal within five percent of the financing bank's appraisal and on their selling their condominium by July 31, 1987. The seller accepted their offer.

The Steptoes then applied for a mortgage loan with defendant Savings of America (SOA). SOA accepted their application and ordered an appraisal. Mr. Steptoe also engaged Charles DeCant (DeCant), an appraiser recommended by his employer, to conduct an independent appraisal. DeCant told the Steptoes that, in his opinion, the homes in the Old West End were overpriced and the area overrated. He appraised the Robinwood home at $80,000. Lillian Steptoe testified in her deposition that they couldn't believe that as they had looked at a number of homes in the Old West End that were selling for over $100,000 that were not nearly as nice as the Robinwood home.

After DeCant's appraisal, Edward Clunk (Clunk), a staff appraiser at SOA, appraised the Robinwood home. He testified in his deposition that his original appraisal came in at $115,000. However, Rollie Morgan (Morgan),[2] SOA's chief appraiser, disagreed with that valuation and allegedly ordered Clunk to redo his appraisal using new comparables.[3] They also disagreed on the value of the Robinwood home's finished attic, which the seller had leased to a tenant. Clunk felt that the finished attic added value to the property while Morgan was hesitant to assign any value to it at all. Clunk redid his appraisal, apparently using new comparables, and came back with a value of $94,500.

SOA advised Beauregard that the Robinwood home would not support the Steptoes' loan request of $103,500.[4] SOA did not discuss any other options with them. The Steptoes then offered the seller $95,000 but he rejected it and they began looking for another home. Almost one month later, the Robinwood home sold for $115,000.[5]

Approximately one and one-half years later, Clunk spoke with Michael Murray (Murray), president of plaintiff the Old West End Association. Clunk told Murray about his original appraisal and his conversations with Morgan. Plaintiffs then instituted the present lawsuit, charging SOA with racially discriminatory appraisal and

---

1. The Old West End is a geographically distinct neighborhood in Toledo that is bounded by Central Avenue, Detroit Avenue, Monroe Street and Collingwood Avenue.

2. Morgan was originally named as a defendant in this action but was dismissed without prejudice at SOA's request on April 18, 1991. On January 31, 1992, plaintiffs moved for leave to amend their complaint by interlineation to again add him as a defendant.

3. One method used to appraise the value of a home is to look at three comparable homes in the same area that have sold in recent months. The appraiser then makes adjustments, either up or down, to reflect the differences between each comparable home and the home being appraised.

4. The Steptoes had planned on putting 10%, or $11,500, down on the property.

5. The buyers financed their purchase with State Home Savings Bank, which appraised it on July 28, 1987 for $116,000.

lending practices. They allege that SOA violated their rights under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, the Civil Rights Act of 1871, 42 U.S.C. § 1985(3) and the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* SOA now moves for summary judgment on all counts.

## DISCUSSION

Rule 56, Fed.R.Civ.P., directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any  material fact and that the moving party is entitled to judgment as a matter of law.

The Court's function in ruling on a motion for summary judgment is to determine if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. *United States v. Articles of Device,* 527 F.2d 1008, 1011 (6th Cir.1976); *Tee–Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion." *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1324 (6th Cir. 1983). To summarize, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. *Smith v. Pan Am World Airways,* 706 F.2d 771, 773 (6th Cir.1983).

A principle purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provision states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P. Rule 56(e) requires the non-moving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553.

In their first claim for relief, plaintiffs allege that SOA's actions violated their rights under the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 *et seq.* Specifically, plaintiffs allege that SOA violated 42 U.S.C. §§ 3604(a) and (b) and 3605.[6] SOA argues that it is entitled to summary judgment on this count because plaintiffs have failed to establish a *prima facie* case of discrimination.

The parties have cited, and this Court is aware of, only one case dealing with the elements of a *prima facie* case under §§ 3604 and 3605 where the discrimination alleged is based on a defendant's appraisal practices. In that case, *Old West End Ass'n. v. Buckeye Fed. Sav. & Loan,* 675 F.Supp. 1100 (N.D.Ohio 1987), a white cou-

---

**6.** As they pertain to this case, 42 U.S.C. § 3604(a) and (b) make it unlawful to refuse to sell or otherwise make available a dwelling after a person has made a bona fide offer to buy or to discriminate against a person in the terms, conditions or privileges of a sale of a dwelling or in providing services connected with that sale because of that person's race or color. 42 U.S.C. § 3605(a) makes it unlawful for any person or entity engaging in residential real estate-related transactions to discriminate in making available such transactions because of race or color.

ple had attempted to purchase a home in the Old West End of Toledo. The court, applying the analysis enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), held that the plaintiffs had made out a *prima facie* case under both the Fair Housing Act and the Civil Rights Act by establishing that:

(1) the housing sought to be secured was in a minority neighborhood;

(2) that an application for a loan to purchase the housing located in a minority neighborhood was made;

(3) that an independent appraisal concluded that the value of the housing equaled the sale price;

(4) that the buyers were credit worthy; and

(5) that the loan was rejected.

*Id.* at 1103.

SOA argues that plaintiffs have failed to establish the fifth element of the *Buckeye* criteria; i.e. they have failed to come forth with any evidence that the Steptoes' loan application was rejected. SOA argues that the Steptoes withdrew their loan application because Mr. Steptoe felt it was useless to proceed with SOA and because the conditions upon which their offer to purchase the Robinwood home were not satisfied: they failed to obtain an independent appraisal within five per cent of the financing bank's appraisal and they were unable to sell their condominium by the required date. The defendants argue that SOA constructively rejected the Steptoes' loan by intentionally lowballing the appraisal on the Robinwood home so that it would not support the Steptoes' loan request.

■ The Sixth Circuit has consistently rejected the automatic application of the *McDonnell Douglas* criteria to discrimination claims out of a fear that such a mechanical application may bar worthy claims or supply a triable claim where none truly exists. *See La Grant v. Gulf & Western Mfg. Co., Inc.,* 748 F.2d 1087 (6th Cir.1984); *Sahadi v. Reynolds Chemical,* 636 F.2d 1116 (6th Cir.1980); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66 (6th Cir.1982). Instead, each claim must be evaluated on a case-by-case basis. *Sahadi, supra* at 1118, n. 3. Moreover, in a discrimination case brought pursuant to the FHA, a plaintiff need not prove that the defendant acted with a racially discriminative motive; a *prima facie* case can be made out by showing that the defendant's actions had a racially discriminatory effect. *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1036–37 (2nd. Cir.1979) (citations omitted). "Effect, and not motivation, is the touchstone, in part because clever men may easily conceal their motivations." *United States v. Black Jack,* 508 F.2d 1179, 1185 (8th Cir.1974), *cert. denied* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975).

In the case *sub judice,* the importance of not mechanically applying the *McDonnell Douglas* criteria, as adapted by the *Buckeye* court, is underscored. An appraisal sufficient to support a loan request is a necessary condition precedent to a lending institution making a home loan. A potential defendant in an FHA case could always insulate itself from liability under the *Buckeye* criteria by purposefully lowballing an appraisal and then doing nothing more. The prospective purchaser/borrower, faced with an appraisal that will not support his loan request, is faced with two choices: (1) hope that he can renegotiate the purchase price to conform with the lowballed appraisal, or (2) withdraw his loan application as to that particular piece of property.

■ Plaintiffs have proffered ample evidence from which a jury could infer that, even if SOA's actions were not racially motivated, they had a racially discriminatory effect. Clunk originally appraised the Robinwood home at $115,000. After Clunk had reappraised it for $94,500, SOA carried it on its own comparable cards at $115,000. Morgan did not follow SOA's policies when it came to changing Clunk's appraisal: the original appraisal should have been completed in ink with a single line drawn through the items Morgan didn't agree with and the new figures written above the changes and initialed. SOA also had a policy that a substantial deviation between

the original and final appraisal required a comment by the appraiser; it was not followed in this case.

The Robinwood home was appraised by another bank and sold for $115,000 less than one month after Morgan ordered Clunk to redo his appraisal.[7] William Fall, whom plaintiffs have submitted as an expert appraiser, has sworn that both SOA's and DeCant's appraisals were defective. Plaintiffs' statistical analysis of SOA's lending patterns in the Old West End as compared to Perrysburg, Ohio, a predominantly white suburb of Toledo, supports their position. Taking all of the above into consideration, plaintiffs have certainly made out a *prima facie* case that SOA's conduct had, at the very least, a racially discriminatory effect on the Steptoes and, possibly, all other potential borrowers who wished to purchase homes in the Old West End.

SOA also argues that, because the two conditions in the Steptoes' original offer to purchase were not satisfied, even if Clunk's original appraisal had stood, they would not have purchased the Robinwood home. First, it is axiomatic that a party in whose favor a condition precedent in a contract operates may waive that condition. As to the independent appraisal requirement, it is obvious that the Steptoes had discounted DeCant's appraisal; with SOA's appraisal of $94,500 in hand, their second offer of $95,000 was not within five percent of DeCant's appraisal. If that offer had been accepted, the Steptoes would have purchased the Robinwood home. As to the requirement that they sell their condominium by a certain date, with hindsight it is apparent that that condition would not have been met. However, while that may be probative, it is not dispositive of plaintiffs' first claim. Because SOA has not come forward with any admissible evidence which would allow a trier of fact to rationally conclude that its actions did not have a racially discriminatory effect, summary judgment on this count must be denied.

■ In their second claim for relief, plaintiffs allege that the intentional, racially motivated acts of the defendants violated the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982. It has been held that a plaintiff must meet the same requirements to establish a *prima facie* case under these statutes as under the FHA. *See McHaney v. Spears,* 526 F.Supp. 566, 574 (W.D.Tenn. 1981). SOA argues that it is entitled to summary judgment on this count because plaintiffs have failed to meet those requirements. However, as discussed above, plaintiffs have established a *prima facie* case under the FHA. As such, they have also established one under §§ 1981 and 1982 and summary judgment on this claim must be denied.

■ In their third claim, plaintiffs allege that the policies and practices of SOA, Morgan, Clunk and other unnamed employees constituted a conspiracy which violated 42 U.S.C. § 1985. SOA argues that it is entitled to summary judgment on this claim because a corporation cannot conspire with its agents. Plaintiffs acknowledge that this is the general rule but argue that exceptions to it have been made in other situations.

The Sixth Circuit has adopted as a general rule the "intracorporation theory": i.e., a corporation cannot engage in a civil conspiracy with its agents or employees because the acts of those agents or employees are in reality the acts of the corporation itself. *Doherty v. Am. Motors Corp.,* 728 F.2d 334, 339–40 (6th Cir.1984) (citations omitted); *see also Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 509–10 (6th Cir.1991) ("[s]ince all the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."). Since *Doherty* was decided, the district courts in this Circuit have consistently followed the general rule unless there was some allegation that the defendants were

---

7. SOA argues that this appraisal was not an independent one and, therefore, plaintiffs also failed to meet the third *Buckeye* criteria. However, SOA does not allege that this appraisal or the appraiser were in any way related to or interested in the plaintiffs in this case. The Court is persuaded that that appraisal is independent enough to meet the *Buckeye* test.

acting outside the scope of their employment. *See Rennick v. Champion Int'l. Corp.*, 690 F.Supp. 603, 604–05 (S.D.Ohio 1987) (§ 1985 conspiracy charge dismissed because "case [did] not present a situation where individuals in a corporation acted outside the scope of their employment."); *Kerans v. Porter Paint Co., Inc.*, 656 F.Supp. 267, 270–71 (S.D.Ohio 1987) (summary judgment granted to defendants on § 1985 claim because the employee was acting within the scope of his employment, making his acts "essentially a single act by a single corporation."), *aff'd without op.*, 866 F.2d 431 (6th Cir.1989); *Nieto v. United Auto Workers Local 598*, 672 F.Supp. 987, 992–93 (E.D.Mich.1987) (summary judgment for defendant union on § 1985 claim because discriminatory acts by its members were sanctioned by and executed on its behalf); *Givan v. Greyhound Lines, Inc.* 616 F.Supp. 1223, 1224 (S.D.Ohio 1985).

In the case *sub judice*, while plaintiffs point out that in certain situations courts have found exceptions to the general rule, they have failed to demonstrate how the facts in this case fit those exceptions. A review of the complaint reveals that each of the alleged discriminatory acts occurred within the scope of the alleged co-conspirators' employment. It contains no allegations that any acts were outside the scope of their employment. As such, a § 1985 conspiracy charge cannot stand and summary judgment on this claim must be granted to SOA.

In their fourth claim, plaintiffs allege that SOA's discriminatory actions were intentional and therefore, they seek exemplary or punitive damages. SOA argues that it is entitled to summary judgment on this claim because there is no evidence that race was a factor in any of its decisions. However, given that this Court has already determined that plaintiffs have established a *prima facie* case as to the alleged violations of 42 U.S.C. §§ 3604, 3605, 1981 and 1982, summary judgment on this claim is denied; to the extent that plaintiffs seek such damages for a violation of 42 U.S.C. § 1985, summary judgment is granted to SOA.

In their fifth claim, plaintiffs allege that SOA violated 42 U.S.C. § 2000d, which makes it unlawful to exclude from participating, deny the benefits of, or discriminate under any program or activity receiving financial assistance from the Federal Government. SOA argues that it is entitled to summary judgment on this claim because the Steptoes applied for a conventional loan and nowhere in the complaint is there any allegation pertaining to a federally funded program. Plaintiffs argue, in a footnote contained in their surrebuttal, that, to the extent that SOA is bound by the Community Reinvestment Act of 1977 and the Home Mortgage Disclosure Act of 1975, plaintiffs were denied the benefit of those programs.

■ 42 U.S.C. § 2000d is intended "to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary." *Soberal–Perez v. Heckler*, 717 F.2d 36, 38 (2nd Cir. 1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984). It was not intended to establish a broad right of action for anybody aggrieved by a failure of some federal program. *Sumpter v. Harper*, 683 F.2d 106, 108 (4th Cir.1982).

■ In the case *sub judice*, plaintiffs have not alleged and there is no proof in the record that SOA received any federal funding which it turned around and provided to potential mortgagors. The mere fact that SOA is bound by certain federal statutes or participates in certain federal programs is insufficient to give plaintiffs standing to bring a claim under 42 U.S.C. § 2000d. As such, summary judgment on this claim will be granted to SOA.

Finally, plaintiffs have moved to amend their complaint to again add Morgan as a defendant in this action. Morgan was dismissed as a party to this action, at SOA's request, on April 18, 1991. Plaintiffs seek to rejoin him because SOA argued that one of the reasons it was entitled to summary judgment on plaintiffs' § 1985 conspiracy claim was because Morgan had been dismissed as a party. Clearly, if that charge

had come under one of the exceptions to the "intracorporation theory,", thereby surviving summary judgment, this Court would grant plaintiffs' motion to moot that argument. However, as plaintiffs' third claim does not meet an exception to that theory as discussed above, there is no need to bring Morgan back into this action. As such, plaintiffs' motion to amend is denied.

Accordingly, it is

ORDERED that defendant's motion for summary judgment is granted in part and denied in part.

FURTHER ORDERED that plaintiffs' motion for leave to amend their complaint by interlineation to add Rollie Morgan as a party defendant to this action is denied.