Helen LATIMORE, Plaintiff,

v.

CITIBANK, F.S.B., Marcia Lundberg,
and Ed Kernbauer, Defendants.

No. 95 C 0436.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 23, 1997.

Michael D. Gerstein, Law Office of Michael D. Gerstein, Chicago, IL, Edwin R. McCullough, Chicago, IL, for Plaintiff.

Robert J. Kriss, Alan Norris Salpeter, Lucia Nale, Mary Ann Spiegel, Mayer, Brown & Platt, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Helen Latimore, sued Citibank, F.S.B. ("Citibank") and two of its employees, Marcia Lundberg and Ed Kernbauer, for racial discrimination in denying a mortgage loan application. The defendants have moved for summary judgement. For the following reasons, the motion is granted.

### I.[1]

On August 16, 1993, Ms. Latimore, an African–American, submitted an application for a mortgage loan to Citibank. She sought $51,000, using her residence at 6150 South Ingleside, Chicago, Illinois as collateral. The racial population of Ms. Latimore's neighborhood was and is over 90 percent African–American. Citibank assigned Mr. Kernbauer, its in-house appraiser, to prepare an appraisal of Mr. Latimore's house. On August 26, 1993, Mr. Kernbauer prepared an appraisal report valuing the plaintiff's property at $45,000, yielding a loan-to-value ratio of 113 percent. For the type of loan Ms. Latimore was seeking, Citibank's lending criteria required a loan-to-value ratio of, at most, 75 percent.

---

1. The following facts are undisputed.

There followed several telephone conversations between the plaintiff and Ms. Lundberg, the Citibank's account executive responsible for Ms. Latimore's application.[2] Ms. Lundberg informed the plaintiff that the appraisal value of her property would not support the loan. Upon learning that Ms. Latimore had higher appraisals of her home, Ms. Lundberg asked that they be forwarded. Ms. Lundberg received an appraisal report, dated October 8, 1992 and reflecting a value of $82,000 ("October 1992 appraisal"), and submitted it, along with Mr. Kernbauer's appraisal, to the Citibank's Appraisal Review Department.

Having reviewed Ms. Latimore's file, the Appraisal Review Department concluded that no change was warranted to Mr. Kernbauer's initial appraisal of $45,000.[3] After informing Ms. Latimore of that decision, Ms. Lundberg submitted the plaintiff's application to Underwriting, which denied the loan. As an African–American, Ms. Latimore was entitled to another level of review by the Community Reinvestment Act ("CRA") Committee. The CRA Committee examined the plaintiff's file and concluded that the denial of her loan application was consistent with the Citibank's underwriting criteria. Citibank mailed an adverse action notice to Ms. Latimore on October 12, 1993. On January 23, 1995, Ms. Latimore filed suit.

In Counts I through IV, Ms. Latimore alleges that the defendants discriminated against her on the basis of her race or the racial composition of her neighborhood by denying her a loan, in violation of Sections 1981 and 1982 of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1982, the Fair Housing Act ("FHA"), 42 U.S.C. 3605, and the Equal Credit Opportunity Act ("ECOA"). 15 U.S.C. 1691(a)(1). In Count V, Ms. Latimore alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"). 815 ILCS 505/1 et seq. (1993). The defendants move for summary judgment.

## II.

To prevail on a claim under Sections 1981[4] and 1982,[5] the plaintiff must prove intentional discrimination by the defendants. *Phillips v. Hunter Trails Community Ass'n*, 685 F.2d 184, 187 (7th Cir.1982). In contrast, under the FHA[6] and the ECOA,[7] the plaintiff "must show that 'race was a motivating consideration in the [defendants'] decision' not to make the loan." *Thomas v. First Fed. Sav. Bank*, 653 F.Supp. 1330, 1338–39 (N.D.Ind.1987) (quoting *Kaplan v. 442 Wellington Coop. Bldg. Corp.*, 567 F.Supp. 53, 57 (N.D.Ill.1983)); *Saldana v. Citibank, F.S.B.*, No. 93 C 4164, 1996 WL 332451, at *2 (N.D.Ill. June 13, 1996).

Adopting the burden-shifting approach of *McDonnell Douglas Corp. v.*

---

2. The precise number, content, and timing of these conversations are disputed. The disputes, however, are immaterial and will therefore not be addressed.

3. Prior to the review, Mr. Kernbauer submitted a memorandum to Ms. Latimore's file, indicating that he had made an error in measuring the depth of the plaintiff's lot, providing the correct dimensions, and noting that the change would not increase the estimated value.

4. 42 U.S.C. § 1981(a) provides, in part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."

5. 42 U.S.C. § 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

6. This statute makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race[ or] color." 42 U.S.C. § 3605(a).

7. This statute makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race[ or] color." 15 U.S.C. § 1691(a)(1).

FHA and ECOA encompass "disparate impact"/"discriminatory effect" claims, as well as "discriminatory intent" claims. The former arise "when a facially neutral policy or action has an unequal impact on different subgroups in the housing market." *Phillips*, 685 F.2d at 189–90(FHA); *Gross v. United States Small Bus. Admin.*, 669 F.Supp. 50, 52–53 (N.D.N.Y.1987), *aff'd*, 867 F.2d 1423 (2d Cir.1988) (ECOA).

*Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the courts have articulated the same prima facie case requirements for all four statutes. *Selden Apartments v. United States Dep't of Hous. & Urban Dev.,* 785 F.2d 152, 159 (6th Cir.1986) (§ 1982 and FHA); *Saldana,* 1996 WL 332451, at *2 (FHA and ECOA). Thus, in a case where the plaintiff alleges that her loan application was discriminatorily denied, she must prove (1) that she is a member of a protected class, (2) that she applied for and was qualified for a loan, (3) that the loan was rejected despite her qualifications, and (4) that the defendants continued to approve loans for applicants with qualifications similar to those of the plaintiff. *Thomas,* 653 F.Supp. at 1338(FHA); *Gross,* 669 F.Supp. at 53 (ECOA); *Bell v. Mike Ford Realty Co.,* 857 F.Supp. 1550, 1556 (S.D.Ala.1994) (§ 1982).[8]

■ There is no dispute that Ms. Latimore, an African–American, satisfies element one. The remaining elements are disputed. The defendants maintain that, although Ms. Latimore's credit history met the Citibank's underwriting guidelines, she was ultimately not qualified for a loan because she did not satisfy the Citibank's loan-to-value ratio of, at most, 75 percent. Ms. Latimore maintains that, due to race considerations, Mr. Kernbauer's appraisal did not reflect her home's true value, and that Ms. Lundberg assisted white applicants but not African–Americans during the appraisal review process.

To withstand summary judgment, Ms. Latimore must provide evidence from which a reasonable factfinder could conclude that she meets the elements of the prima facie case. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Because the last three elements are intertwined, Ms. Latimore's task is essentially to show that the defendants treated her materially differently than similarly situated white loan applicants or loan applicants from non-minority neighborhoods.

### Mr. Kernbauer's Appraisal

Mr. Kernbauer appraised Ms. Latimore's home at $45,000. Ms. Latimore offers the October 1992 appraisal of $82,000, which she forwarded to Ms. Lundberg; her expert's "reconstructive" appraisal of $62,000;[9] and a 1994 appraisal of $79,000, performed in connection with the plaintiff's receipt of a mortgage loan from the Household Bank.[10] A townhouse similar to Ms. Latimore's, but with four additional rooms, sold for $50,000 several months after Mr. Kernbauer's appraisal.

Although Ms. Latimore's expert, Russell Hume, selected different comparable sales and made different adjustments to those sales than Mr. Kernbauer, Mr. Hume admitted that the selection of comparable sales is an art, not a science, that adjustments are judgment-driven, and that he could support the adjustments Mr. Kernbauer made. *See Thomas,* 653 F.Supp. at 1341–42 (plaintiffs' appraisal expert admitted that his appraisal was "merely another subjective evaluation ... through the inexact appraisal process"). The question, however, is whether there is evidence from which a reasonable factfinder could conclude that Mr. Kernbauer was inconsistent in his appraisal methods depending on "the race or neighborhood of the homeowners." *Id.* at 1339.

In *Thomas,* the defendant appraised the plaintiffs' house at $22,000 and found the loan-to-value ratio to be in excess of its guidelines. The defendant thus denied the

---

**8.** If the plaintiff makes out a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for declining the loan application. *Watson v. Pathway Fin.,* 702 F.Supp. 186, 188 (N.D.Ill.1988). If the defendant satisfies his burden, the plaintiff must prove that the defendant's reasons are not the true reasons for the decision, but a pretext for discrimination. *Gross,* 669 F.Supp. at 53; *Leadership Council for Metro. Open Communities v. Zuraitis,* No. 92 C 2597, 1995 WL 557461, at *6 (N.D.Ill. Sept.18, 1995).

**9.** Although performed for this suit, this appraisal purports to reflect the value of Ms. Latimore's property in August 1993.

**10.** Along with their reply brief, the defendants move to strike this appraisal evidence as irrelevant and hearsay. Ms. Latimore has not responded to this motion. In light of my resolution of this motion, I need not resolve this issue.

plaintiffs' mortgage application. The plaintiffs brought suit under Sections 1981 and 1982, the FHA, and the ECOA. At trial, the plaintiffs offered an appraisal by their expert of $40,000. 653 F.Supp. at 1333–35. Granting the defendant's motion to dismiss all claims pursuant to Fed.R.Civ.P. 41(b), the court held as follows:

> [i]n theory, the court agrees that a defendant cannot escape liability under the Fair Housing Act by artificially lowering the appraised value of a home for a prohibited reason like race. Plaintiffs need not prove actual intent to discriminate on the part of defendants in order to make out a violation of the Fair Housing Act.... However, plaintiffs must show that race was a motivating consideration in the defendants' decision not to make the loan.... Here, after plaintiffs presented all their evidence, they still had not shown that defendants' knowledge of the Thomases' race contributed in any degree to ... defendants' decision ... in appraising the Thomas home.

*Id.* at 1338–39 (quotations omitted). The court dismissed the ECOA and the Sections 1981 and 1982 claims under the same reasoning. *Id.* at 1341–42.

It is undisputed that in 1993, Mr. Kernbauer's appraisals supported the loan amounts of other African–American residents of Ms. Latimore's Woodlawn neighborhood. In addition, John March, Citibank's then Chief Community Reinvestment Act Underwriter for U.S. Operations, affirms that in 1993, Mr. Kernbauer appraised the property of 69 African–American applicants.[11] Only three of those applications, including the plaintiff's, were declined because of the appraised value of the property.

Ms. Latimore argues that under *Watson, Steptoe v. Savings of America,* 800 F.Supp. 1542 (N.D.Ohio 1992), and *Old West End Ass'n v. Buckeye Fed. Sav. & Loan,* 675 F.Supp. 1100 (N.D.Ohio 1987), she has presented a triable case. In *Watson,* the defendant claimed that he rejected the plaintiffs' application because they had a history of late payments. 702 F.Supp. at 187. The plaintiffs countered with evidence that "other applicants with late payments did receive loans from [the defendant]." *Id.* at 188. The court held that, for the purposes of the FHA, the plaintiffs made out a prima facie case, because they created a factual issue as to whether they were qualified for the loans and whether the defendant approved the loan applications of persons with similar qualifications. *Id.* at 188–89. In the present case there is no evidence that Mr. Kernbauer appraised Ms. Latimore's house using a different method than similarly situated houses owned by non-minorities or houses in non-minority neighborhoods. *Thomas,* 653 F.Supp. at 1339. There is likewise no evidence that his appraisals consistently caused denials of loans to minorities or persons residing in minority neighborhoods, while resulting in approvals for non-minorities or people in non-minority neighborhoods.

Ms. Latimore's reliance on *Old West End Ass'n* and *Steptoe* is based on the courts' holdings that a plaintiff claiming racial discrimination in appraisal practices under the FHA makes out a prima facie case by showing that (1) the property was in a minority neighborhood, (2) an application for a loan secured by this property was made, (3) an independent appraisal concluded that the val-

---

11. Citibank was unable to locate four files of African–American applicants, whose appraisals were assigned to Mr. Kernbauer and whose applications were declined. Ms. Latimore contends that the defendants did not produce the 69 appraisal files upon which Mr. March based his summary. Fed.R.Evid. 1006 provides that summary evidence is admissible if the underlying materials are "made available for examination or copying or both, by other parties at reasonable time and place." Defendants offered to permit plaintiff to review the files relied upon by Mr. March, to verify the accuracy of his summary, and to submit an additional brief to the court. Ms. Latimore's counsel did not accept the invita-

tion. Moreover, the defendants argue and Ms. Latimore does not dispute that in May 1995, they produced to Ms. Latimore two main documents from which Mr. March's affidavit is derived: a list by loan number of appraisals conducted by Mr. Kernbauer in 1993 and the Citibank's 1993 Loan Application Register. The latter document is a list of all first mortgage loan applications received by Citibank from the Chicago Metropolitan area, including the loan application number, the race of the applicant, whether the loan application was approved or declined, and, for the declined applications, the primary reason for declining the application.

ue of the property was sufficient to secure the loan, (4) the applicant was otherwise credit worthy, and (5) the loan application was rejected. *Steptoe,* 800 F.Supp. at 1546; *Old West End Ass'n,* 675 F.Supp. at 1103. However, this particular formulation of the prima facie case has not been used anywhere besides the Northern District of Ohio. In addition, both cases involved materially different facts.

In *Old West End Ass'n,* the plaintiffs sought to sell a house in a minority neighborhood. They agreed with the buyers on a purchase price of $78,500. The firm that prepared mortgage applications ordered an appraisal, which valued the house at the sale price and noted that the predominant value of the properties in the area was $70,000. The firm forwarded the application, along with the appraisal, to the lender. The lender denied the buyers' loan application for $78,500. The court concluded that the plaintiffs made out a prima facie case of an FHA violation because there was evidence that defendant's alleged reason for denial was untrue as well as evidence that the lender's underwriting practices differed depending upon the racial composition of the neighborhood.

In *Steptoe,* the minority plaintiffs sought to buy a house in a racially mixed neighborhood. The house they found was advertised at $129,900, but the sellers agreed to accept $115,000. The plaintiffs applied for a loan to the defendant, who ordered an appraisal. The defendant's staff appraiser concluded that the house was worth $115,000. The defendant's chief appraiser disagreed and ordered a new appraisal, which was lower and on the basis of which the plaintiffs' application for a $103,500 loan was denied. 800 F.Supp. at 1544. The *Steptoe* court found an inference of racially motivated behavior from the facts that, despite the downward revision of the appraisal, the defendant continued to carry the property on its comparable sales card as valued at $115,000, and the chief

appraiser failed to follow the defendant's policies regarding reappraisals. Moreover, the plaintiff's expert testified that the defendant's second appraisal was defective, and the plaintiffs proffered statistical evidence supporting their theory that the defendant's lending practices resulted in a racially discriminatory effect in the neighborhood in which the plaintiffs sought to reside. 800 F.Supp. at 1546–47.

In the present case, by contrast, there is no evidence of the sort present in *Old West End Ass'n* or *Steptoe,* or any other evidence which would allow a reasonable factfinder to conclude that Mr. Kernbauer appraised Ms. Latimore's house as he did because of her race or the racial composition of her neighborhood. The uncontradicted evidence shows that his appraisals consistently supported mortgage loans for other African–Americans and in the same neighborhood. A meaningful prima facie case must bear a logical relationship to the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption. It must, in short, allow a jury to infer a violation. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 878, ——––——, 116 S.Ct. 1307, 1309–10, 134 L.Ed.2d 433 (1996). Here, the prima facie case must allow a factfinder to infer that the defendants acted because of racial considerations. *Phillips,* 685 F.2d at 187; *Thomas,* 653 F.Supp. at 1338–39.

Ms. Latimore argues that Citibank's loss of Mr. Kernbauer's field notes and computer-generated data, used in preparing the appraisal, entitles her to an inference that the missing evidence would be favorable to her.[12] Ms. Latimore relies on *Shipley v. Dugan,* 874 F.Supp. 933 (S.D.Ind.1995). In that Title VII case, the defendants violated federal regulations pertaining to the preservation of personnel records. *Id.* at 939–40. Assuming *arguendo* that Citibank violated the relevant ECOA regulations,[13] *Shipley* is nevertheless distinguishable.

---

12. *Compare S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.,* 695 F.2d 253, 258–59 (7th Cir.1982). Ms. Latimore does not argue that the materials at issue were destroyed in bad faith.

13. Ms. Latimore invokes regulations that provide that for 25 months after the creditor takes an action with respect to a loan application, he must retain in original form or a copy thereof: ... any application that it receives, any informa-

In *Shipley*, the plaintiff claimed that she was discriminatorily denied a position. The defendants inadvertently destroyed all records pertaining to the hiring process, including the resumes, cover letters, and interview notes of all candidates. *Id.* at 939. As a result, the "[p]laintiff's attempts to demonstrate that she was more qualified than one or more of the candidates who were passed through the initial stages of the [hiring] process and who received second interviews with the [defendants were] necessarily complicated by the absence of these records," leading the court to conclude that "some remedial measure [was] appropriate." *Id.* at 940. In the instant case, Ms. Latimore has not shown how the unavailability of Mr. Kernbauer's field notes and computer-generated data complicates her task of proving discrimination, given that the appraisal itself, which is available to Ms. Latimore, sets forth the bases of Mr. Kernbauer's evaluation.[14] In *Shipley*, the denial of the defendants' summary judgment motion was based upon more than the inference. The court noted that the "[p]laintiff ... adduced some evidence that her interview was in some ways different from the interviews of other applicants." 874 F.Supp. at 943. Ms. Latimore has not adduced such evidence and proffers nothing besides the inference. Thus, summary judgment is granted with respect to Mr. Kernbauer on Counts I through IV.

*Ms. Lundberg & the Appraisal Review Process*

■ Ms. Latimore contends that, during the appraisal review process, Citibank treated her differently than similarly situated white applicants. In support of this contention, Ms. Latimore offers the following undisputed evidence. An appraisal of a home of one of Ms. Lundberg's white clients done during 1993 was too low to support a loan. Ms. Lundberg and the applicant's realtor discussed getting "comparables"[15] for the review process. The applicant provided such "comparables" and Ms. Lundberg forwarded them to Gary Schlittler of the Citibank's Appraisal Review Department. Mr. Schlittler sent the "comparables" to the appraiser. The appraiser refused to revise the appraisal and the client's loan application was therefore denied. Ms. Latimore provides evidence that other Citibank's account executives were able to assist their white clients in increasing their appraisals on the basis of additional "comparables."

Ms. Latimore argues that Ms. Lundberg treated her differently than the white applicant because she never specifically requested "comparables." However, Ms. Lundberg's purpose for requesting the October 1992 appraisal was to obtain "comparables" and, undisputedly, such was her practice in cases

14. The defendants point out that Ms. Latimore's expert had access to the databases utilized by Mr. Kernbauer. Thus, only Mr. Kernbauer's field notes are truly "missing." Ms. Latimore hints at what the missing evidence might have revealed—whether there were any townhouses among the comparable sales Mr. Kernbauer located and what their geographic location was. Ms. Latimore suggests that since her property is a townhouse, the comparable sales upon which Mr. Kernbauer based his appraisal should have been townhouses as well. The defendants respond that Mr. Kernbauer did indeed rely on two two-bedroom townhouses in his appraisal. In any event, the dispute about Mr. Kernbauer's choice of comparable sales for the purposes of the appraisal is not a material dispute. *Thomas*, 653 F.Supp. at 1339 (defendants not "require[d] ... to employ specific appraisal techniques when evaluating homes for purposes of making loans").

15. "Comparables" are comparable sales.

tion required to be obtained concerning characteristics of the applicant to monitor compliance with the act and this regulation or other similar law, and any other written or recorded information used in evaluating the application and not returned to the applicant at the applicant's request.

12 C.F.R. § 202.12(b)(1)(i). Ms. Latimore contends that Mr. Kernbauer's field notes and computer-generated data arc "other written or recorded information used in evaluating the application." It is at least arguable, however, that since Citibank relied on Mr. Kernbauer's appraisal to evaluate Ms. Latimore's application, it was not required to retain anything besides the appraisal. By contrast, the regulations at issue in *Shipley*, requiring the preservation of "[a]ny personnel or employment record made or kept ... [in connection] with hiring," unambiguously encompassed the resumes, cover letters, and interview notes which the defendants discarded. 874 F.Supp. at 939.

similar to Ms. Latimore's.[16] The plaintiff does not argue that she did not know or understand that a real estate appraisal is based on "comparables." Ms. Latimore offers no evidence that Ms. Lundberg asked her white client for "comparables" in addition to, or instead of, an available appraisal. Significantly, when the "comparables" provided by Ms. Lundberg's white client failed to result in an upward reevaluation of the original appraisal, Ms. Lundberg did not request additional "comparables." When Ms. Latimore insists that Ms. Lundberg should have informed her that her appraisal's "comparables" were unacceptable,[17] she is asking for an additional step which Ms. Lundberg did not take with respect to a similarly situated white client.[18]

Ms. Latimore has not presented sufficient evidence for a reasonable factfinder to conclude that Ms. Lundberg treated the plaintiff differently than the white loan applicants by not specifically requesting additional "comparables" to challenge Mr. Kernbauer's appraisal.[19] Therefore, summary judgment is granted as to Ms. Lundberg on Counts I through IV. Ms. Latimore does not claim that any other agents of Citibank acted discriminatorily towards her. Since Citibank can only act through its agents, summary judgment is granted as to Citibank on Counts I through IV.

## III.

In order to recover under the Illinois Consumer Fraud Act, a plaintiff must establish that (1) the defendant engaged in a deceptive act or practice, (2) the defendant intended the plaintiff to rely on the deception, and (3) the deception occurred during the course of conduct involving trade or commerce. *Siegel v. Levy Org. Dev. Co.*, 153 Ill.2d 534, 607 N.E.2d 194, 198, 180 Ill.Dec. 300 (1992).

Ms. Latimore points to Ms. Lundberg's statement that the application was fine, that it had been preliminarily approved, and that Ms. Lundberg was waiting for the appraisal results. This statement cannot be characterized as deceptive because there is no evidence that, at that point in the application process, what Ms. Lundberg stated was not the truth. Ms. Latimore also points to the fact that Ms. Lundberg asked her to forward the earlier appraisals. There is no evidence that this act was in any way deceptive. It is undisputed that Ms. Lundberg utilized the October 1992 appraisal precisely in the way she promised, by forwarding it to Mr. Schlittler for review together with Mr.

16. Ms. Latimore's counsel asked Ms. Lundberg to review a document entitled the Appraisal Review Process. Pointing to the subsections which instruct the account executive to inform the applicant that he or she may submit additional "comparables," Ms. Latimore's counsel asked Ms. Lundberg whether she followed that procedure. Ms. Lundberg responded that, in most cases, she did, but that if the applicants stated that they had an appraisal that was less than a year old, Ms. Lundberg asked them to submit it instead of "comparables," because the "comparables" would already be in the appraisal.

17. Stating that Mr. Kernbauer's comparables were 6 blocks away, while those in Ms. Latimore's October 1992 appraisal were further than 13 blocks away from the plaintiff's residence, Mr. Schlittler wrote in Ms. Latimore's file that absent any other data, no change of Mr. Kernbauer's appraisal was warranted.

18. There is no evidence that other Citibank's account executives made more than one request for market data, whether "comparables" or another appraisal, of their white clients during the review appraisal process.

19. The fact that Ms. Lundberg did not inform Ms. Latimore that Citibank used a form in connection with appraisal review is not illustrative of different treatment. There is no evidence that Ms. Lundberg told her white client about such a form, or that other account executives did so. Moreover, the form in question was the Citibank's Notice to Appraiser, i.e., the Citibank's means of communicating with the appraisers. There is no evidence that the applicants communicated directly with the appraisers. Ms. Latimore's claim that Ms. Lundberg never told her that she could request a smaller loan does not show that Ms. Lundberg treated Ms. Latimore differently than her white client. There is no evidence that either Ms. Lundberg or her colleagues, as a matter of course, told their white clients that they could apply for a smaller loan. Finally, Ms. Latimore's contention that Ms. Lundberg never informed her about the appraisal review process is contradicted by Ms. Latimore's admission that Ms. Lundberg told her that her application would be sent to a review board within Citibank.

Kernbauer's appraisal. Since no reasonable factfinder could conclude that the statements or acts to which Ms. Latimore points were deceptive, summary judgment is granted to defendants with respect to Count V.

### Conclusion

For the reasons stated above, defendants' motion for summary judgment is granted.