**Peter PISELLO and Rainbow Property Management Corp., Plaintiffs,**

**v.**

**TOWN OF BROOKHAVEN, John Lamura, Individually and as Supervisor of the Town of Brookhaven; Edward Hennessey, Both Individually and as a Member of the Town Board of Brookhaven; and Andrew Dark, Both Individually and as Chief Building Inspector for the Town of Brookhaven, Defendants.**

No. CV 95–2960 (ADS).

United States District Court,
E.D. New York.

July 10, 1996.

E. Christopher Murray, Hempstead, New York, for plaintiffs.

Richard Charles Hamburger, P.C., Melville, New York, for defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises from the claims of the plaintiffs, Peter Pisello and Rainbow Property Management Corp. ("Rainbow," collectively "Pisello" or the "plaintiff") that the defendants, the Town of Brookhaven (the "Town"), John LaMura ("LaMura"), Edward Hennessey ("Hennessey"), and Andrew Dark ("Dark," collectively the "defendants") violated their constitutional and common law rights. The gravamen of the plaintiff's allegations is that the defendants discriminated against him because of his role in locating minorities in public housing in the Shirley/Mastic area of Suffolk County, New York.

In his Amended Complaint, the plaintiff alleges causes of action for constitutional violations of the equal protection clause, procedural and substantive due process, 42 U.S.C. §§ 1981 and 1985, and a common law claim for defamation. The defendants move for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). The plaintiff opposes the defendants' motion and cross moves to serve a Second Amended Complaint to include a cause of action for violations of the Fair Housing Act, 42 U.S.C. §§ 3604, 3617.

## I. *Background*

The following facts are taken from the Amended Complaint. Rainbow Property Management Corp. is a New York corporation which rents offices located at 1402 Montauk Highway in Mastic, New York. Peter Pisello is a resident of Mastic, New York and is an officer, director, and the sole Rainbow shareholder. Rainbow is engaged in the "management and leasing of rental properties in the Shirley/Mastic area located within the Town of Brookhaven." The lion's share of Rainbow's business involves locating African American and Hispanic individuals who receive government assistance in rental housing.

The defendant Town of Brookhaven, a municipality organized under the laws of the State of New York, is located in Suffolk County. The defendant John LaMura, at all times relevant to this litigation was the Supervisor of the Town of Brookhaven. Edward Hennessey was a member of the Town Council and Andrew Dark was the Town's Chief Building Inspector.

As stated above, the plaintiff is engaged in the leasing and management of rental properties in the Shirley/Mastic area of the Town of Brookhaven. According to the Amended Complaint, his success resulted in a "strong backlash from the existing, predominately Caucasian, members of the Shirley/Mastic community, and for a number of years certain [local] businesses and individuals … have openly expressed contempt for the plaintiff because of his [business]." Part of this "backlash" includes being "blackballed" from the local chamber of commerce, the president of which, Pat Peluso, owns a competing real estate brokerage firm. Moreover, the plaintiff has been the subject of numerous physical threats and harassment by members of the community which culminated in the fire bombing of his offices.

After the premises were destroyed, the owner, Thomas Brennan ("Brennan") sought to rebuild at the same location. Although Brennan filed the necessary applications, Dark, as the Town's Chief Building Inspector "arbitrarily refused to act" on the applications. The plaintiff pleads upon information and belief that Dark's refusal to process the applications was the result of community policy "adopted and implemented" by the Town Supervisor John LaMura and Councilman Edward Hennessey to curtail the influx of minorities in the Shirley/Mastic area.

Nevertheless, in December 1994, the building located at 1402 Montauk Highway was reconstructed and the plaintiff was able to resume his business. When this occurred, according to the plaintiff, members of the community sought the aid of defendants LaMura and Hennessey. Specifically, the plaintiff alleges, upon information and belief, that Peluso solicited the aid of Councilman Hennessey, whom he had supported in his bids for elected office, to assist in "forc[ing the] plaintiff[ ] out of business." As a result of this meeting, the defendants conspired against the plaintiff by bringing a civil suit against his landlord for failure to obtain the requisite permits for the leased property. It is alleged that based on that civil suit, the defendants subsequently closed the plaintiff's place of business without notice or a hearing, even though the leased property did not pose a threat to public health or safety.

According to Pisello, the defendants further violated his constitutional rights by singling out the minority occupied properties he manages for inspections and by threatening the owners of those properties because they continued to work with the plaintiff. The details of these threats are not identified. On at least one occasion however two properties occupied by African Americans located 125 Patchogue Avenue and 127 Patchogue Avenue in Mastic were singled out for inspection and searched by Town officials including the defendant Hennessey. Although

the defendants issued a press release on June 9, 1995 stating that these searches were based on complaints filed with respect to these properties, Pisello alleges that no such complaints were ever made.

According to the plaintiff, the press release contained the following statement by defendant Hennessey:

> [Rainbow's] actions in constructing a building and ignoring the Town's permit procedures in the process raises serious questions standards [sic] in their business practices. That is why Rainbow Property Management [sic] are a blight to our communities and a threat to the health and safety of the tenants who are placed there.... This action by Rainbow Properties and its principals demonstrate that they conducted their business affairs in complete disregard for the standards of law that are in place, not only to protect social services tenants, but to maintain the integrity of those communities who have endure [sic] slumlord business practices.

In addition to Hennessey's statement, the same press release contains the following statement by defendant LaMura:

> Rainbow Properties [sic] Management is the largest property management company for landlords dealing with Social Services clients in the Mastic/Shirley area. For them to represent themselves as experts in this area to their clients while disregarding the Town Code in their own construction project suggests a certain level of contempt for the law.

According to the Amended Complaint, these statements are false and were made with "malice," "knowledge of their falsity," "reckless disregard for the truth" and "improper motive." Specifically, Pisello alleges that LaMura and Hennessey knew that he was not the owner of the premises located at 1402 Montauk Highway and that he had no connection to that building's construction. In addition, the plaintiff alleges that the defendant Hennessey used his influence to have all social service applications made by minority tenants of the properties managed by Rainbow or other minority applicants using the plaintiff's services forwarded to his office in order to "delay their processing."

As a result of the defendants' activities, the plaintiff was forced to relocate his business and property owners cancelled their listings and contracts for fear of reprisals with the Town. Pisello seeks $660,000 in compensatory damages, $2,000,000 in punitive damages and attorneys' fees and costs.

Based on these facts, the plaintiff alleges constitutional violations of the equal protection clause, substantive and procedural due process, infringement of 42 U.S.C. §§ 1981 and 1985 and a common law claim for defamation. The defendants now move pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings with respect to the entire Amended Complaint. Pisello opposes the defendants motion, arguing that he has adequately alleged his claims and cross moves for leave to serve a Second Amended Complaint to add a cause of action pursuant to the Fair Housing Act, 42 U.S.C. §§ 3604, 3617.

## II. *Discussion*

### A. *The standard for judgment on the pleadings*

Judgment on the pleadings is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). In considering a motion for judgment on the pleadings, the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences therefrom in favor of the non-movant. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994); *DeSantis v. United States*, 783 F.Supp. 165, 168 (S.D.N.Y.1992). Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief, the court can not grant a defendant's motion for judgment on the pleadings. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.) (when deciding a Rule 12(c) motion, the court applies the same standard as that applicable to a 12(b)(6) motion), *cert. denied*, — U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *George C. Frey Ready–*

*Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977).

In its discretion and upon notice to the parties, a court may consider materials outside the pleadings. If it does so and notice is given to the parties, the motion for judgment on the pleadings is treated as one for summary judgment. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994); *Sellers*, 842 F.2d at 642.

#### B. *The defendants' motion*

The defendants move for judgment on the pleadings with respect to each of the plaintiff's causes of action. For the sake of clarity, the Court will address each argument in turn.

##### 1. *Section 1983 claims*

The defendants make three arguments in support of their motion for judgment on the pleadings with respect to the plaintiff's section 1983 claims. Municipalities are subject to liability under section 1983 for alleged violations of an individual's constitutional rights resulting from a municipal policy or custom. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This principle applies to the claims against the Town and the individual defendants who are alleged to have acted under color of state law in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 23–27, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) (distinguishing between suits against municipal officers in their official and individual capacities and recognizing that a suit against individuals in their official capacities "should be treated as a suit against the State").

The Supreme Court has recognized however, that municipal liability may be based on the single decision where the action at issue is directed by those who establish government policy. *Pembaur v. Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Weber v. Dell*, 804 F.2d 796, 803 (2d Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). While the existence of a policy or custom justifying liability under section 1983 is a question of federal law, whether the official had final policy making authority is a question of state law. *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1299–1300.

Section 1983 does not impose liability upon a municipality or its supervisory officials solely on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. To establish a municipality's liability on the basis of acts by its lower echelon employees, a violation of constitutional rights based on policy or custom must be demonstrated. *Id.* at 690, 694, 98 S.Ct. at 2035–36, 2037–38. "The inference that a [constitutionally deficient] policy exist[s] may . . . be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991).

Three elements are necessary to state a cause of action for municipal liability, namely, (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), quoting, *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983). Applying these standards, the Court reviews the defendants' motion with respect to Pisello's section 1983 claims.

###### a. *Failure to plead with sufficient particularity*

Initially, the defendants contend that Pisello's constitutional claims based on equal protection, procedural and substantive due process must be dismissed for failure to allege sufficient facts to support these claims. At the outset the Court notes that section 1983 claims brought against a municipality are not subject to a higher pleading standard than required under Fed.R.Civ.P. 8(a). *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163–65, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *see also Blue v. Koren*, 72 F.3d 1075, 1083 n. 4 (2d Cir.1995) (citing *Leatherman*). Accordingly, to survive the defendants' Rule 12(c) motion, Pisello need

only allege "a short and plain statement of the claim[s] showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Leatherman,* 507 U.S. at 168, 113 S.Ct. at 1163.

Having recognized the applicable standard for reviewing the plaintiff's claims, the Court now turns to the substantive allegations contained in the Amended Complaint. To state a claim for relief pursuant to 42 U.S.C. § 1983, the plaintiff must allege that the defendants deprived him of "a right secured by the Constitution or laws of the United States and that such deprivation was committed by persons acting under color of state law." *Walentas v. Lipper,* 862 F.2d 414, 418 (2d Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989), quoting, *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987); *see also Gomez v. Toledo,* 446 U.S. 635, 638, 100 S.Ct. 1920, 1922, 64 L.Ed.2d 572 (1980).

The defendants contend that the allegations contained in the Amended Complaint are "conclusory and vague" and as a result they are entitled to judgment on the pleadings as a matter of law. In support of their position they cite *Ostrer v. Aronwald,* 567 F.2d 551 (2d Cir.1977) and this Court's decision in *Chow v. Coghlan,* 1990 WL 92702 (E.D.N.Y.1990). In both *Ostrer* and *Chow,* the courts held that claims based on "diffuse and expansive allegations" should be rejected "unless amplified by specific instances of misconduct." *Ostrer,* 567 F.2d at 553; *see also Chow* at 5–6 (reaching similar conclusion with respect to conspiracy claims).

The defendants however fail to note a critical development in the law. At the time the *Ostrer* and *Chow* decisions were rendered, there was significant authority for the proposition that section 1983 claims were subject to a higher standard of pleading than in other cases. *See* Martin A. Schwartz & John E. Kirlin, Section 1983 Litigation: Claims, Defenses, and Fees (2d ed. 1991) at 18–19, citing, *Alfaro Motors v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (recognizing authority for imposing a higher pleading standard in section 1983 claims in every circuit). As recognized above, in 1993 the Supreme Court in *Leatherman* rejected a heightened pleading requirement for section 1983 claims against municipal bodies, and stated that federal courts and their litigants must rely on summary judgment and control of discovery to "weed out" unmeritorious claims. *Leatherman,* 507 U.S. at 165–67, 113 S.Ct. at 1162; *Javid v. Scott,* 913 F.Supp. 223, 230–31 (S.D.N.Y.1996) (recognizing the effect of *Leatherman* on prior case law). This is not to say that the pleading rules in *Ostrer* and *Chow* are necessarily invalid. Rather, the Court merely recognizes that the plaintiff need only satisfy the general pleading standards of Fed.R.Civ.P. 8 and nothing more. *See Garg v. Albany Indus. Development Agency,* 899 F.Supp. 961, 969 (N.D.N.Y.1995) (recognizing the standard set forth in *Leatherman* but nevertheless granting the defendants Rule 12(b)(6) and 56(c) motions and dismissing the plaintiffs' section 1983 claims for failure to allege claims with sufficient particularity).

Reviewing the Amended Complaint pursuant to the criteria set forth above, the Court finds that while Pisello's allegations are somewhat generally pled, they are not so deficient as to warrant judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). As Pisello argues in his opposition papers, the Amended Complaint alleges that "the defendants, with discriminatory intent, adopted a policy to drive plaintiff[ ] out of business." In support of his position, the plaintiff alleges that:

1. The defendant Dark, as Chief building inspector, acting at the request of defendants LaMura and Hennessey refused to process Brennan's permit applications for commercial real property because the plaintiff sought to lease that space;

2. The defendants closed the plaintiff's offices without prior notice or hearing and without threat to public health or safety;

3. The defendants singled out minority occupied properties managed by the plaintiff for inspections and threatened the owners and occupants as a result of their dealings with the plaintiff;

4. The defendant Hennessey singled out two of the properties for inspection located at 125 and 127 Patchogue Avenue even though no complaints were filed regarding those premises, and Hennessey reported the contrary to the media;

5. The defendant Hennessey caused social service applications filed by the plaintiff's minority clients to be delayed as a result of their dealings with the plaintiff; and

6. The defendants Hennessey and LaMura issued a false press release regarding the plaintiff after his business offices had been wrongfully closed.

In the Court's view, the Amended Complaint satisfies the pleading requirements of Fed.R.Civ.P. 8. The allegations as summarized above refer to conduct sufficient to put the individual defendants on notice of their allegedly unlawful conduct and any relevant attendant circumstances. Moreover, in a case such as this, where it is not reasonable for the Court to expect that the plaintiff be familiar with the full range of the defendants practices under challenge, *see Frazier v. Southeastern Pa. Transp. Auth.*, 785 F.2d 65, 68 (3d Cir.1986); *District Council 47 v. Bradley*, 795 F.2d 310, 313 (3d Cir.1986) (quoting *Frazier*), dispositive motions with respect to section 1983 claims are better left for summary judgment. *Leatherman*, 507 U.S. at 165–67, 113 S.Ct. at 1162. Accordingly, the defendants' motion for judgment on the pleadings with respect to the plaintiff's section 1983 claims based on a failure to plead with sufficient particularity is denied.

### b. *Failure to allege an equal protection claim*

■ The second of the defendants' three arguments in support of their motion for judgment on the pleadings is addressed to Pisello's equal protection cause of action. To state a claim for selective enforcement under the equal protection clause, the plaintiff must allege that:

(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) ... such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights or malicious bad faith intent to injure a person.

*Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996) (internal quotations omitted).

■ Applying this two element test, the Court finds that the plaintiff has sufficiently pled a cause of action under the equal protection clause. With respect to the first element, Pisello has alleged that he was treated selectively. For example, according to the Amended Complaint, the defendants refused to issue permits for office space the plaintiff sought to lease. Further, the defendants closed the plaintiff's offices without notice or a hearing or any attendant threat to public health or safety. The defendants also singled out minority occupied properties managed by the plaintiff for inspection in spite of the fact no complaints regarding these premises were ever lodged. While Pisello fails to specifically allege that other property management firms were not subject to similar harassment, the Court finds that this omission is not critical to Pisello's cause of action. Drawing all reasonable inferences in favor of the nonmovant, as the Court is required to do when considering a Rule 12(c) motion, the Court finds that these allegations *necessarily* imply that other similarly situated enterprises were not subject to the same harassment, namely random inspections of their properties without any registered complaints or a closing of their offices without notice or a hearing, followed by a press release containing false statements.

Having found the first element set forth in *Crowley* satisfied, the Court need not waste much time with the second. In addition to claiming selective treatment, the plaintiff must also allege that this treatment was based on an "impermissible consideration." In this case, the impermissible consideration is readily apparent—race. Pisello alleges that the defendants discriminated against him because he is responsible for providing low income housing to minorities, a practice clearly forbidden by the equal protection clause. *See Hunter v. Erickson*, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969) (recognizing that racial classifications by the

state with respect to housing violates the equal protection clause). Accordingly, the defendants' motion for judgment on the pleadings with respect to the plaintiff's equal protection claims is denied.

In reaching this conclusion the Court expressly rejects the defendants' attempt to analogize this case to *Defeo v. Sill*, 810 F.Supp. 648 (E.D.Pa.1993). In *Defeo*, the plaintiffs, a sewage treatment facility and its owner brought suit against a township and member of its Board of Supervisors and other government actors. The plaintiffs alleged that the defendants "collobaratively adopted and implemented policies which encourage townships to assume control of privately owned sewage facilities such as [the] plaintiff's." In so doing, the defendants allegedly misused their governmental power to undermine the plaintiff's ability to operate profitably. *Id.* at 652. The district court dismissed the plaintiff's equal protection claim under a rational basis analysis. *Id.* at 655–56. In so doing the court reasoned that there were no allegations regarding similarly situated sewer service providers being treated differently. By contrast, this case clearly addresses selective treatment based on the plaintiff's business dealings with his minority clientele. Accordingly, the Court is confronted with a case in which strict scrutiny rather than rational basis analysis applies and where there are sufficient allegations supporting the alleged disparate treatment. As a result, *Defeo* is inapplicable.

 Before leaving this issue the Court expressly recognizes that Pisello, although a non-minority individual, does have standing to maintain his equal protection claims. As the plaintiff properly argues, "a [s]tate may not punish a non-white for having social contacts with a black.... Likewise it may not through one of its creatures, punish or discriminate against a corporation for its willingness, past or present, to make contracts with blacks. And if it does so, then the person so punished or discriminated against has a § 1983 right of action." *Scott v. Greenville County*, 716 F.2d 1409, 1415 (4th Cir.1983), quoting, *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 17 (1st Cir. 1979); *see also Cutting v. Muzzey*, 724 F.2d

259, 260 (1st Cir.1984) (recognizing that a developer of low income housing largely for blacks is entitled to assert a section 1983 claim); *Crow v. Brown*, 457 F.2d 788 (5th Cir.1972). Accordingly, the Court finds that the plaintiff, as manager of real property leased to low income minority individuals has standing to maintain his section 1983 claims.

### c. *Due process claims*

The defendants' final argument with respect to the plaintiff's section 1983 claims is that Pisello fails to allege a liberty or property interest sufficient to support either a procedural or substantive due process claim. In his opposing papers, Pisello defines his due process claims as follows. He was denied procedural due process because his business offices were "seiz[ed]" as the result of a State Court ex parte temporary restraining order based on zoning code violations issued "without any prior proceedings" and without any immediate danger to the public for the sole purpose of harassment. As a result, Pisello's "property rights were [wrongfully] interfered with." Further, the plaintiff was denied substantive due process because he "was singled out for a campaign of harassment so as to hinder [his] efforts to find rental housing for minorities in the Shirley/Mastic area." The Court will address each cause of action separately.

#### i. *Procedural due process*

As the Second Circuit has repeatedly recognized:

> In order to sustain an action for deprivation of property without due process of law, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process of law. *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir.1990) (per curiam)....

> "The existence and dimensions of property interests are defined by 'existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d

1448, 1454 (2d Cir.1991) (quoting *Goetz v. Windsor Cent. Sch. Dist.,* 698 F.2d 606, 608 (2d Cir.1983) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972))). *Local 342, Long Island Public Serv. Employees v. Town Bd. of The Town of Huntington,* 31 F.3d 1191, 1194 (2d Cir.1994); *see also Narumanchi v. Board of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988) (recognizing a two step inquiry: (1) whether the plaintiff has a liberty or property interest protected by the Constitution; and (2) if a protected interest is identified, and the plaintiff is deprived of that interest, what process is due, and is that minimum requirement satisfied).

▮ Applying these standards, the Court finds that the plaintiff's procedural due process claim must be dismissed. In reaching this conclusion, the Court need not determine whether the plaintiff was deprived of a constitutionally protected property interest. Even if Pisello satisfied the first prong of the inquiry set forth above, he is unable to fulfill the second.

New York Town Law § 268(2) provides that a municipality may seek injunctive relief including a temporary restraining order when enforcing its zoning ordinances. *See, e.g. Village of Freeport v. Jefferson Indoor Marina,* 162 A.D.2d 434, 436, 556 N.Y.S.2d 150, 152 (2d Dep't 1990) (recognizing a municipality's right to equitable relief when enforcing its zoning ordinances). The Practice Commentary accompanying section 268(2) cogently summarizes the case law as follows:

A private litigant seeking a temporary restraining order or preliminary injunction is required to demonstrate a likelihood of success on the merits, irreparable harm in the absence of relief and a balancing of equities in favor of granting relief. *See Town of East Hampton v. Buffa,* 157 A.D.2d 714, 549 N.Y.S.2d 813 (2d Dept. 1990). However, "[a] municipality has authority to obtain a temporary restraining order and preliminary injunction strictly enforcing its zoning ordinances without application of the three-pronged test for injunctive relief." *Village of Freeport* [, 162 A.D.2d at 436, 556 N.Y.S.2d at 152. Town

Law section 268(2) authorizes a town to institute an injunctive action to enforce its zoning laws. "Such a statutory provision requires no showing of special damage or injury to the public or the nonexistence of an adequate remedy at law as a condition to injunctive relief, commission of the prohibited act being sufficient." *Town of Islip v. Clark,* 90 A.D.2d 500, 501, 454 N.Y.S.2d 893 (2d Dept.1982); *see also Village of Freeport,* [*supra* ]. If violation of a zoning law is demonstrated, it is not necessary to show irreparable harm. *See Village of Williston Park v. Argano,* 197 A.D.2d 670, 602 N.Y.S.2d 878 (2d Dep't 1993). However, although irreparable harm need not be demonstrated, whether preliminary relief should be granted, nonetheless, is governed by equitable principles and a balancing of equities in favor of granted relief is required. *See Village of Cazenovia v. Cazenovia College,* 161 A.D.2d 986, 557 N.Y.S.2d 557 (3d Dept. 1990); *Town of Southampton v. Sendlewski,* 156 A.D.2d 669, 549 N.Y.S.2d 434 (2d Dept.1989); *Town of Espos [Esopus] v. Fausto Simoes and Associates,* 145 A.D.2d 840, 535 N.Y.S.2d 827 (2d Dept.1988).

N.Y.Town L. § 268, Prac.Comm. (Supp. 1996).

With respect to Pisello's procedural due process claim, while New York state law permits a court to issue a temporary restraining order to a municipality in order to enforce compliance with its zoning ordinances, there is no prohibition to the occupant's participation in the subsequent hearing regarding issuance of a preliminary injunction or his right to appeal. In addition, section 268(2) does not provide a municipality with an unfettered right to obtain a temporary restraining order. Rather, it is incumbent upon the issuing court to balance the equities of the matter before making its decision. Moreover, in this case, as the defendants point out in their motion papers, and the plaintiff does not deny, Pisello actually availed himself of post deprivation remedies in New York Supreme Court. Accordingly, assuming the existence of a protectible property right, the Court finds that Pisel-

lo was afforded due process sufficient to pass constitutional muster. As a result, the defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) with respect to the plaintiff's procedural due process claims is granted.

### ii. *Substantive due process*

██ The plaintiff's substantive due process claim is difficult to understand. In his opposition papers, he states only that the Amended Complaint "clearly supports" a substantive due process claim "because it alleges that plaintiffs were singled out for a campaign of harassment so as to hinder minorities from finding housing not related to a legitimate government interest." The Amended Complaint offers no further support as the substantive due process cause of action is set forth in single conclusory paragraph following a paragraph which merely incorporates all prior factual allegations as follows:

### AND AS FOR THE THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

28. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 25 of the complaint as if fully set forth herein.

29. Defendants' conduct deprived plaintiffs of property without the substantive due process required by the United States Constitution violating 42 U.S.C. Section 1983.

██ "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" *See Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995). Such causes of action have been sustained where a landowner has a property interest in a permit being sought where the applicant has a "clear entitlement" to the government approval sought. *Walz v. Town of Smithtown,* 46 F.3d 162, 168 (2d Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995). Whether the applicant has a "clear entitlement" depends upon the degree of dis-

cretion enjoyed by the issuing authority. *R.R.I. Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).

The Amended Complaint however, does not refer to a permit denied, or any analogous interest. Rather, Pisello essentially claims that he was treated unfairly because he locates housing for low income minorities in the Shirley/Mastic area. In the Court's view, while these allegations may support an equal protection claim, they do not join that group of rare claims afforded protection under the doctrine of substantive due process. *See Local 342,* 31 F.3d at 1196 (to sustain an alleged violation of substantive due process, the right at issue must be "so rooted in the traditions and conscience of our people as to be ranked as fundamental") (internal quotation omitted). Accordingly, the defendants' motion for judgment on the pleadings with regard to the plaintiff's substantive due process claim is granted.

### 2. *Section 1981 claims*

██ The defendants further move for judgment on the pleadings with respect to the plaintiff's section 1981 claim. Section 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, and exactions of every kind, and to no other.

(b) "Make and enforce" contracts

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongov-

ernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981. To state a claim under section 1981, a plaintiff must allege that: "(1) the plaintiff is a member of racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993), *cert. denied*, —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995).

██ Although the defendants contend in a conclusory fashion that Pisello is unable to satisfy any of these elements, the focus of their argument is that the plaintiff lacks standing to maintain his claim under section 1981.

In general, the first requirement for maintaining a section 1981 claim is that the plaintiff be a member of racial minority. *See Mian*, 7 F.3d at 1087. Nevertheless, the Second Circuit has recognized that "non-minority plaintiffs may bring an action under section 1981 against one who has retaliated against them because they did *not* engage in purposeful racial discrimination in a contractual or marital context ... or because they objected to the defendant's purposeful discrimination." *Albert v. Carovano*, 851 F.2d 561, 572–73 (2d Cir.1988) (emphasis in original) (internal citations omitted). For example, in *De Matteis v. Eastman Kodak*, 511 F.2d 306, 312 (2d Cir.), *modified on other grounds*, 520 F.2d 409 (1975), the court held that where a white person alleged that he was forced to retire because he sold his house to a black person, the seller had standing to sue under section 1981. *Id.*, quoting, *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969) (where "a white person has been '... punished for trying to vindicate the rights of [non-white] minorities ...' [that person] has standing to sue under § 1981"); *see also Alizadeh v,. Safeway Stores, Inc.*, 802 F.2d 111, 114 (5th Cir.1986) (finding standing where white female alleged that she was discharged because her husband was Iranian); *Parr v. Woodmen of World Life Ins.*

*Co.*, 791 F.2d 888, 890 (11th Cir.1986) (white male alleging that he was not hired because his wife was black); *Park View Heights Corp. v. City of Black Jack*, 467 F.2d 1208 (8th Cir.1972) (corporation formed to develop federally assisted housing project and corporation providing "seed money" have standing to question whether purpose of zoning ordinances was to exclude low and moderate income individuals from the city); *Winston v. Lear–Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977) (white plaintiff stated a claim under section 1981 where he was allegedly discharged because he protested racially motivated discharge of.a black coworker).

The Court of Appeals for the First Circuit has recently rearticulated the standard for situations in which non-minorities will have standing under section 1981. "Such cases have generally been limited to situations in which the plaintiff was the direct target of the defendant's discriminatory action." *Benjamin v. Aroostook Medical Ctr., Inc.*, 57 F.3d 101, 105 (1st Cir.1995).

> In *Des Vergnes [v. Seekonk Water Dist.*, 601 F.2d 9, 13–14 (1st Cir.1979) ], for example, a water district acted directly against the nonminority developer by refusing the developer's request to include a tract of land proposed for low-income minority housing in the water district. *Des Vergnes*, 601 F.2d at 11–12. Consequently, we held that the non-minority developer has standing under § 1981 even though the water district's alleged discriminatory action was motivated by animosity towards the race of the prospective tenants and not the race of the developer. *Id.* at 14.

*Benjamin*, 57 F.3d at 105.

Applying this case law, the Court finds that allegations contained in the Amended Complaint are sufficient to confer standing upon the plaintiff. Pisello alleges that he was subject to ongoing harassment by the defendants as a result of his providing housing to low income minorities in the Shirley/Mastic area. The harassment alleged was directed exclusively against the plaintiff by means of seizing his office space, issuing a false press release, refusing to process his landlord's building permit applications to prevent reconstruction of the plaintiff's office

space, inspecting properties he manages in the absence of any complaints, threatening the occupants, and delaying social service applications to his clients, all in an effort to curtail the plaintiff's business. In the Court's view, these allegations fall under the penumbra of section 1981 cases in which the non-minority plaintiff is retaliated against as a result of his failure to discriminate. in the contractual context, as recognized by the Second Circuit in *Albert* and *De Matteis* and more recently by the First Circuit in *Benjamin.*

In reaching this conclusion, the Court finds the defendants' reliance on *Hotel St. George Assocs. v. Morgenstern,* 819 F.Supp. 310 (S.D.N.Y.1993) to be without merit. In *Hotel St. George,* the plaintiff, a hotel association filed suit against the defendants as a result of their efforts to limit the number of HIV positive individuals and AIDS victims housed at a hotel. In the complaint, the plaintiff attempted to assert the rights of the black and Latino residents of the hotel. In holding that the plaintiff lacked standing under section 1981, the Court recognized that the plaintiff as a "provider of services" did not have standing to assert the rights of the hotel residents. *Id.* at 318. The facts in this case are different from those in *Hotel St. George* in two respects. First, in that case the plaintiffs admitted at oral argument that they lacked standing to maintain their section 1981 claims. *Id.* at 319. Second, in this case, the plaintiff is not suing only as the provider of services to an injured party who is being discriminated against. Rather he is suing as *the* injured party, discriminated against directly because of his contractual relationship with his minorities clientele. Accordingly, *Hotel St. George* is distinguishable on its facts.

### 3. *Section 1985(3) claims*

The defendants similarly attack Pisello's section 1985 claims on two grounds: (1) lack of standing; and (2) failure to allege a claim with sufficient particularity. Again the Court will address each argument separately.

At the outset, the Court notes that the Amended Complaint does not set forth which subsection of section 1985 the plaintiff relies upon. However, the Court presumes that the plaintiffs are invoking subsection three as no other subsection is relevant. *See* 42 U.S.C. § 1985(1) (prohibiting conspiracy to prevent any person from accepting public office) and (2) (addressing conspiracy to obstruct justice).

#### a. *Standing*

To state a claim under section 1985(3), the plaintiff must set forth are four elements:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) of any right of a citizen of the United States. Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise class based, invidious discriminatory animus behind the conspirators's action."

*Mian,* 7 F.3d at 1087. The defendants' initial argument is that the plaintiff is unable to maintain a section 1985 claim because he "do[es] not represent a cognizable protected 'class.'" However, contrary to the defendants position, courts have recognized section 1985 claims made by white plaintiffs where the invidious discriminatory animus is against a protected class. *See Maynard v. City of San Jose,* 37 F.3d 1396, 1403 (9th Cir.1994) (holding that a white employee had standing to claim that he was retaliated against in violation of section 1985(3) based on his calling attention to a racially discriminatory hiring practice). In this case, the plaintiff alleges a section 1985 cause of action based on the defendants racially discriminatory conspiracy to keep him from placing minority families in low income housing. In the Court's view, such a conspiracy constitutes the type of race based animus contemplated by section 1985. Accordingly, the defendants' motion to dismiss the plaintiff's section 1985 cause of action for lack of standing is denied.

#### b. *Failure to plead with the required specificity*

As the defendants accurately recognize in their moving papers, "a claim of

conspiracy to violate civil rights requires more than just general allegations." *See Orange v. County of Suffolk*, 830 F.Supp. 701, 707 (E.D.N.Y.1993), citing, *Ostrer*, 567 F.2d at 553; *Laverpool v. New York City Transit Authority*, 760 F.Supp. 1046, 1056 (E.D.N.Y.1991). However, again contrary to the defendants' contentions, the Court finds that the Amended Complaint sufficiently pleads a cause of action pursuant to section 1985. As stated above, Pisello alleges that the defendants have conspired to put him out of business in order to prevent low income minority families from moving into their community. In support of his position, the plaintiff alleges that after his office space was burned down, defendant Dark, at the requests of defendants LaMura and Hennessey, refused to process the necessary building permits for him to reoccupy the property; that his offices were closed without notice and a hearing; that the minority occupied properties he manages were singled out for inspection and its occupants were threatened based on their dealings with the plaintiff; that his clients' social service applications were delayed; and a false press release was issued after his office was closed in order to place him in a bad light and drive him out of business. Further, the Amended Complaint states that this conduct was undertaken as the result of a race based discriminatory animus on the part of defendants. Taking these allegations as true, the Court finds that the Amended Complaint alleges a cause of action under section 1985(3) sufficient to survive the defendants' motion to dismiss.

### 4. *Common law defamation*

The defendants further move to dismiss the plaintiff's common law defamation claims on two grounds. First, they argue that the Court should, in its discretion, decline to exercise supplemental jurisdiction over the state law claim. Second, the defendants contend that the alleged defamation is not actionable because the statements at issue constitute expressions of opinion.

■ The first argument is easily disposed of. The federal courts may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lippa v. General Motors Corp.*, 760 F.Supp. 1062, 1066 (W.D.N.Y.1990). While the courts will generally dismiss state law claims where the federal claims are dismissed, in cases such as this, where the trial court has denied the defendants' motion to dismiss some of the federal claims, the court will retain jurisdiction over the related state law claims. Accordingly, the defendants' motion for judgment on the pleadings based on the doctrine of supplemental jurisdiction is denied.

■ The defendants second argument, that Pisello's defamation claim should be dismissed because the underlying statements constituted expressions of opinion requires a more detailed analysis. "The essence of the tort of libel is the publication of a statement about an individual that is both false and defamatory." *Brian v. Richardson*, 87 N.Y.2d 46, 637 N.Y.S.2d 347, 350, 660 N.E.2d 1126, 1129 (1995). Because "falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that only statements alleging facts can properly be the subject of defamation actions.'" *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152–53, 603 N.Y.S.2d 813, 817, 623 N.E.2d 1163, 1167 (1993), quoting, *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139, 589 N.Y.S.2d 825, 829, 603 N.E.2d 930, 934 (1992), *cert. denied*, 508 U.S. 910, 113 S.Ct. 2341, 124 L.Ed.2d 252 (1993). "The key inquiry is whether challenged expression, however labeled by defendant, would reasonably appear to state or imply assertions of objective fact." *Immuno AG v. Moor–Jankowski*, 77 N.Y.2d 235, 243, 566 N.Y.S.2d 906, 909, 567 N.E.2d 1270, 1273, *cert. denied*, 500 U.S. 954, 111 S.Ct. 2261, 114 L.Ed.2d 713 (1991). Whether a defendant is entitled to "'opinion' immunity" depends upon the impression left upon the reasonable person created by the language used and the general tenor of the expression. *Id.* at 243, 566 N.Y.S.2d at 909–10, 567 N.E.2d at 1273–74. In making such a determination the Court should consider: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of

being proven true or false; (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion and not fact. *Brian*, 87 N.Y.2d at 50–51, 637 N.Y.S.2d at 350, 660 N.E.2d at 1129.

Applying these standards, the defendants argue that allegedly defamatory press releases constitute nothing more than opinion which is not actionable. The Court disagrees. According to the defendants' moving papers, the June 9, 1995 press release states that a temporary restraining order was obtained ordering the plaintiff not to use his offices after an investigation revealed that the company had failed to submit a site plan or obtain the appropriate building permit for the premises. Based on these findings the defendant Hennessey made the following statements:

> [Rainbow's] actions in constructing a building and ignoring the Town's permit procedures in the process raises serious questions standards [sic] in their business practices. That is why Rainbow Property Management are [sic] a blight to our communities and a threat to the health and safety of the tenants who are placed there.... This action by Rainbow Properties and its principals demonstrate [sic] that they conducted their business affairs in complete disregard for the standards of law that are in place, not only to protect social services tenants, but to maintain the integrity of those communities who have endure [sic] slumlord business practices.

Additionally, the same press release contains the following statement by defendant LaMura:

> Rainbow Properties [sic] Management is the largest property management company for landlords dealing with Social Services clients in the Mastic/Shirley area. For them to represent themselves as experts in this area to their clients while disregarding the Town Code in their own construction projects suggests a certain level of contempt for the law.

According to these statements, the plaintiff's "ignoring the Town's permit procedures" and his "disregarding the Town Code" raise "serious questions about [his] business practices." This conclusion was reached after a "cooperative Brookhaven Town and Suffolk County investigation" in which a special County Executive Task Force was used. However, in spite of what the press release depicts as a thorough government investigation of the matter, there is no mention of the *fact* that Pisello simply rents the offices at 1402 Montauk Highway. *See Gross*, 82 N.Y.2d at 155–56, 603 N.Y.S.2d at 819, 623 N.E.2d at 1169–70. Nor does the press release acknowledge the *fact* that he did not construct or own the building and as a tenant would have no obligation to obtain permits. As a result, the failure to acquire the appropriate permits would appear to rest with the building's owner rather than the plaintiff. In the Court's view, this misleading portrayal of the facts, which lead to the defendants' conclusions that the plaintiff conducts his business "affairs in complete disregard for the standards of the law that are in place" states a cause of action for defamation sufficient to survive a Rule 12(c) motion. Accordingly, the defendants' motion for judgment on the pleadings with respect to the plaintiff's defamation claim is denied.

### 5. Qualified immunity

Finally, the individual defendants move for judgment on the pleadings based on the doctrine of qualified immunity. Under the doctrine of qualified immunity "public officials are immune from § 1983 civil rights suits brought by an aggrieved citizen when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Weaver v. Brenner*, 40 F.3d 527, 532–33 (2d Cir.1994), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Even if the right is clearly established, a defendant may still be entitled to qualified immunity where it was objectively reasonable for the official to believe that his acts did not violate that right. *Jemmott v. Coughlin*, 85 F.3d 61, 65 (2d Cir.1996); *Kaluczky v. City of White Plains*, 57 F.3d 202, 207 (2d Cir.1995). This is not to say that officials are protected from

liability unless the very action at issue has been previously held unlawful, but rather it is to say that the unlawfulness must be apparent in light of preexisting law. *Piesco v. City of New York, Dep't of Personnel,* 933 F.2d 1149, 1160 (2d Cir.), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991) (internal citation omitted).

The doctrine of qualified immunity represents a balance between the individual's right to protection from the abuse of government officials on the one hand and social costs, including the risk of personal monetary liability which would unduly inhibit officials in the discharge of their duties, on the other. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In order to determine whether a particular right was clearly established at the time the defendant acted, a court should consider:

(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Shechter v. Comptroller of the City of N.Y.,* 79 F.3d 265, 271 (2d Cir.1996); *Kaluczky,* 57 F.3d at 207, quoting, *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Applying these standards the Court finds that, based on the allegations contained in the Amended Complaint, at this juncture the individual defendants are not entitled to qualified immunity. The Amended Complaint alleges that the individual defendants conspired to run him out of business because he places low income minority families in their community. In the Court's view, these allegations lay at the heart of this federal civil rights case. As stated above, the fact that the plaintiff is white does not alter this conclusion. As the Court determined, where a plaintiff is retaliated against as a result of the defendants' racially discriminatory animus toward a protected class as the result of the plaintiff's business dealings with that class, that plaintiff is entitled to invoke feder-

al civil rights law for his protection. Accordingly, the defendants' motion for judgment on the pleadings with respect to the individual defendants on the basis of qualified immunity, at this point in the litigation, is denied.

### C. *The plaintiff's cross motion for leave to amend*

The plaintiff cross moves for leave to file a second amended complaint to add a claim under the Fair Housing Act. 42 U.S.C. § 3604, 3617. Rule 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Zahra,* 48 F.3d at 685; *Block,* 988 F.2d at 350 ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing of prejudice or bad faith.").

In determining what constitutes "prejudice," courts are to consider whether the assertion of the new claim (1) requires the opponent to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delays the resolution of the dispute, or (3) prevents the plaintiff from bringing a timely action in another jurisdiction. *Block,* 988 F.2d at 350 (citing cases). "'Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" *Id.,* (quoting *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981).

Pisello seeks leave to file a second amended complaint adding a cause of action under the Fair Housing Act which prohibits interference with individuals who aid minorities in finding housing. *See* 42 U.S.C. § 3617; *Michigan Protection & Advocacy Serv. v. Babin,* 799 F.Supp. 695, 722–27 (E.D.Mich. 1992), *aff'd,* 18 F.3d 337 (1994) (addressing application of section 3617). The defendants do not oppose the plaintiff's cross motion.

Accordingly, given the facts as recited above, the Court cannot say that it would be futile to grant Pisello leave to file his second amended complaint, and because the defendants have not alleged any prejudice, the plaintiff's motion pursuant to Fed.R.Civ.P. 15(a) is granted.

### III. *Conclusion*

After reviewing the submissions of both parties, it is hereby

ORDERED, that the defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is granted in part and the plaintiff's claims based on violations of his procedural and substantive due process rights are dismissed; it is further

ORDERED, that the defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is denied in all other respects; and it is further

ORDERED, that the plaintiff's motion for leave to file a second amended complaint pursuant to Fed.R.Civ.P. 15(a) is granted. The plaintiff is directed to serve and file the Second Amended Complaint within 20 days from the date of this Memorandum of Decision and Order.

SO ORDERED.