Thomas L. DOANE, Plaintiff,

v.

**NATIONAL WESTMINSTER BANK USA, Defendant.**

**No. CV 95 1181 (RJD).**

United States District Court, E.D. New York.

Sept. 24, 1996.

**150**

Richard Marsico, New York Law School Clinic, New York City, for plaintiff.

Mitchell H. Kider, and Joseph F. Yenouskas, Weiner, Brodsky, Sidman & Kider, P.C., Washington, D.C., for defendant.

### MEMORANDUM & ORDER

DEARIE, District Judge.

Plaintiff Thomas L. Doane filed this action against defendant National Westminster Bank ("NatWest"), alleging that NatWest denied a home mortgage loan to the prospective buyers of his home in Bedford Stuyvesant based on the racial composition of the neighborhood and the race of the buyers in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq., and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982. NatWest moves to dismiss plaintiff's section 1981 and 1982 claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of standing.

### FACTS

Because this is a motion to dismiss, the Court accepts as true all allegations in plaintiff's second amended complaint and draws all inferences in his favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). From November 1979 to March 1995, plaintiff, a white male, was the owner-resident of a two-family, four-story brownstone located at 153 Hancock Street in the Bedford Stuyvesant section of Brooklyn. Based on the 1990 census, the racial composition of the neighborhood (Census Tract 249) is 92.56% African–American, 6.14% Latino, and .33% white. Complaint, ¶ 6.

On December 13, 1991, plaintiff contracted to sell his house to Beverly Scott and her sister Cheryl Sims ("the buyers") for $195,-000. Scott and Sims are African–American. The contract conditioned the closing on the buyers' obtaining a mortgage commitment for $156,000. The buyers thereafter applied for a mortgage to NatWest, where Scott was employed. Plaintiff alleges that the buyers were creditworthy. Complaint, ¶ 8.

In March 1992, plaintiff learned that an appraisal commissioned by NatWest had valued his house at $175,000. Based upon the representation of the buyers' attorney that NatWest would immediately issue the mortgage if plaintiff agreed to reduce the purchase price to $185,000, plaintiff agreed to lower the price and provided the buyers with an amended contract incorporating this change. Notwithstanding the price reduction, NatWest denied the buyers' mortgage application on March 24, 1992, citing insufficient income, excessive obligations, and inadequate collateral. On April 1, 1992, the buyers notified plaintiff that the contract was null and void because of their inability to secure a mortgage. An independent appraiser retained by Doane estimated that the value of the property in December 1991 was $197,000. Complaint, ¶ 12. Three years later, plaintiff sold his house to different purchasers for $205,000, including $10,000 in closing costs that he agreed to pay. Plaintiff alleges that NatWest denied the mortgage application "on the basis of the racial composition of the neighborhood in which the subject property is located and/or the race of the applicants for the mortgage." Complaint, ¶ 4. Plaintiff alleges, inter alia, that, as a result of defendant's discriminatory actions,

he was unable to pursue business opportunities available to him outside of New York, that he had to refurnish his house because he had sold his furnishings at a loss after NatWest's representation that it would issue the mortgage after the price reduction, and that he was forced to borrow money and make many late payments on his credit obligations. Complaint, ¶ 15.

## DISCUSSION

■ The determination of whether a particular plaintiff has standing to sue is a two-part inquiry involving constitutional and prudential components. NatWest moves to dismiss plaintiff's section 1981 and 1982 claims for failure to meet the prudential limitations on standing. NatWest does not move to dismiss plaintiff's Fair Housing Act claim, conceding that the prudential limits on standing do not apply to Fair Housing Act claims. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372–74, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982).

■ In order to satisfy the Article III case-or-controversy requirement, a plaintiff must show injury-in-fact, that is, he must show actual or threatened injury resulting from defendant's conduct that is redressible by a court. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 97–101, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). At this point, defendant does not challenge plaintiff's claim that he was injured by its refusal to issue the mortgage; rather, it argues that plaintiff cannot satisfy the prudential component of standing. In order to meet the prudential limitations on standing, a plaintiff must ordinarily "assert his own legal interests rather than those of third parties." *Id.; see also Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). This doctrine, known as *jus tertii*, accomplishes two goals, "the avoidance of the adjudication of rights which those not before the Court may not wish to assert . . . and the assurance that the most effective advocate of those rights at issue is present to champion them." *Duke Power Co. v. Carolina Environ. Study*, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978).

The determination of whether a party is seeking to vindicate the rights of a third party is "often a difficult question." *Benjamin v. Aroostook Medical Ctr., Inc.*, 57 F.3d 101, 105 (1st Cir.1995). Indeed, many cases that initially appear to involve third party rights actually involve first party rights. For example, Scott and Sims enjoy a right not to be discriminated against based on their race in applying for a mortgage. Equally important, however, is Doane's right to sell his house free from racial discrimination based on the composition of his neighborhood. Even if Sims and Scott were white, they still would have a right to apply for a mortgage free from discrimination based on the racial composition of the neighborhood in which the property is located. Because Doane is asserting his own rights in this suit, rights that exist independent of the buyers' rights, the Court finds that *jus tertii* does not apply to the facts of this case. Plaintiff, as a homeowner in a minority neighborhood, is asserting his own rights under the Civil Rights Act to sell his property free from discrimination. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (recognizing that section 1981 guarantees "the personal right to engage in economically significant activity free from racially discriminatory interference").

Although most actions brought pursuant to sections 1981 and 1982 involve allegations of discriminatory acts prompted by hostility to the plaintiff's race, courts have permitted section 1981 and 1982 cases to proceed based on discriminatory conduct motivated by hostility towards another person's race. *See Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 13–14 (1st Cir.1979) (holding that non-minority developer has standing under section 1981 to bring action against water district based on its alleged refusal to include a tract of land intended for low-income minority housing in the water district); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311–12 (2d Cir.), *modified on other grounds*, 520 F.2d 409 (2d Cir.1975) (holding that white plaintiff allegedly forced to retire because he sold his house to a minority had standing under section 1981 to bring suit against his employer); *Pisello v. Town of Brookhaven*, 933 F.Supp. 202 (E.D.N.Y.1996)

(holding that non-minority plaintiffs had standing under section 1981 to bring action against defendants who allegedly harassed plaintiffs for their efforts to find housing for minorities in the area).

■ *Old West End Association v. Buckeye Federal Savings & Loan,* 675 F.Supp. 1100 (N.D.Ohio 1987), involved facts very similar to this case. There, the plaintiffs, white homeowners in a predominantly minority neighborhood, entered into a contract to sell their home to two whites. The buyers applied for a mortgage, but their application was denied. The plaintiffs then filed suit pursuant to sections 1981, 1982, 1985 and the Fair Housing Act against the lender and the firm that prepared the mortgage application, alleging that the defendants denied the application based on the racial composition of the neighborhood. In considering defendants' motion for summary judgment, the district court noted, "[t]he parties involved in the underlying transaction are white. This factor, however, is irrelevant.... This court has previously found that non-minorities have standing to maintain discrimination actions for injuries suffered by them as a result of racially discriminatory practices." *Id.* at 1102 (citations omitted). Drawing all inferences in favor of the plaintiff as the non-moving party, the court in *Old West End Association* found that plaintiffs had established that they applied for a mortgage to purchase property located in a minority neighborhood, that an independent appraisal concluded that the sale price represented the value of the house, that the buyers were creditworthy, and that the loan was rejected. *Id.* Denying the lender's motion for summary judgment, the court in *Old West End Association* held that these facts, proven by the plaintiffs, stated a *prima facie* case under the Fair Housing Act and the Civil Rights Act. Similarly, plaintiff in this case, at least at this pleading stage of the proceedings, has stated a *prima facie* case under sections 1981 and 1982. Plaintiff alleges that the house is located in a predominantly minority neighborhood, that the buyers were creditworthy, that an independent appraiser estimated that the property was worth $197,000 in 1991, and that the mortgage application was denied.

Courts have consistently found that plaintiffs in section 1982 suits have standing to assert their own rights even if those rights overlap with the rights of third parties. In *City of New York v. Fillmore Real Estate, Ltd.,* 665 F.Supp. 178, 182 (E.D.N.Y.1987) (Korman, J.), the City of New York brought a section 1982 action against a real estate brokerage firm, alleging that it engaged in racial steering. Denying defendant's motion to dismiss the complaint on the ground that the City had no standing to assert the rights of its citizens, the court stated that the City "brings this action on its own behalf, asserting that defendants' discriminatory practices depress real estate values, thereby decreasing the City's tax revenues." *Id.* at 181. *See also City of Evanston v. Baird & Warner, Inc.,* 1990 WL 186575 (N.D.Ill. Nov. 15, 1990) (holding that, at least for purposes of motion to dismiss, city was asserting its own rights, not the rights of its citizens, in section 1982 suit against brokerage firm based on racial steering, and noting that "[a] significant reduction in property values directly injures a municipality by diminishing its tax base") (internal quotations marks and citations omitted).

In its motion to dismiss, NatWest relies on *Mackey v. Nationwide Ins. Cos.,* 724 F.2d 419 (4th Cir.1984). In *Mackey,* an insurance agent sued his employer pursuant to sections 1981 and 1982 and the Fair Housing Act, alleging that his employer refused to provide coverage to homeowners in minority neighborhoods, thereby depriving him of potential commissions. The Fourth Circuit found that the plaintiff was asserting the rights of the homeowners in the minority neighborhoods and therefore had no standing under the doctrine of third party standing. The court reasoned:

A racially discriminatory refusal to insure houses in predominantly black neighborhoods may give a cause of action [under sections 1981 and 1982] to the homeowners, the direct victims of the discrimination. The plaintiff does not claim to be such a victim, but alleges only that he lost opportunities to sell property insurance to black friends and acquaintances. *Id.* at 421.

Unlike the insurance agent in *Mackey*, plaintiff in this case alleges that he is the direct victim of NatWest's discriminatory lending practices. As the court in *Mackey* stated, "[t]he persons best suited to challenge the redlining practice are those owners of homes and buildings who have been the direct victims of the alleged discriminatory practice." *Id.* at 422. Although the Fourth Circuit in *Mackey* held that the plaintiff insurance agent did not have standing, the court recognized that a homeowner could bring a section 1981 and 1982 claim alleging discrimination based on the racial composition of a neighborhood. NatWest argues that the language in *Mackey* applies solely to redlining claims in the insurance industry and that, in lending cases, the borrower, not the homeowner, is the direct victim of the discrimination and the proper plaintiff to bring the civil rights action. This argument ignores Doane's right to sell his home free from discrimination based on the racial composition of his neighborhood.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's section 1981 and 1982 claims is denied.

SO ORDERED.